JOSHUA MAURAN, PLAINTIFF IN ERROR, *v.* EDWARD BULLUS, DEFENDANT IN ERROR.

Construction of a letter of guarantee.

In the construction of all written instruments, to ascertain the intention of the parties is the great object of the Court, and this is especially the case in acting upon guarantees.

Generally, all instruments of suretiship are construed strictly as mere matters of legal right. The rule is otherwise where they are founded on a valuable consideration.

IN error to the Circuit Court of the United States for the district of Rhode Island.

The case, as stated in the opinion of the Court, is as follows:

" The defendant in error and Joshua Mauran, Jr., of the city of New York, on the 8th of September, 1836, entered into articles of copartnership in the trade and business of general shipping merchants, and of buying and selling merchandise on their own account, and also on commission for the account of others; which was to continue three years. Mauran agreed to pay into the firm as capital stock, such sums as he should be able to realize on closing the business of merchandising, in which he had been engaged. Bullus agreed to pay a sum of from twenty-eight thousand to thirty thousand dollars in cash.

And it was stipulated that Mauran should not withdraw from the concern more than two thousand dollars per annum, nor Bullus more than three thousand, unless by consent of the copartners in writing. Mauran covenanted that within a reasonable time he would pay the debts owing by him, out of his private funds; and that on or before the 8th of September instant, he would give to Bullus satisfactory security for the performance of this covenant.

On the 9th of September, 1836, the defendant below wrote to Bullus the following letter: ' Mr. Edward Bullus,—Dear Sir,— As you are about to form a connection in the mercantile business in the city of New York, with my son, Joshua Mauran, Jr., under the firm of Mauran and Bullus. And, as the said J. Mau-

ran, Jr., having been, and is at this time prosecuting mercantile business in that city, on his own account: now, therefore, in consideration of the same and at the request of Joshua Mauran, Jr., I hereby agree to bear you harmless in regard to the closing up and settlement of the said Joshua Mauran, Jr.'s former business. and I hereby guaranty you against any loss or liability you may sustain from the former business of said Joshua Mauran, Jr., &c. Signed, Joshua Mauran.

The action was brought by Bullus on this guarantee. On the trial an account against the old concern of Joshua Mauran, Jr., with the firm of Mauran and Bullus, was given in evidence, from which it appeared that the old concern was indebted to the new, the sum of five thousand four hundred and three dollars and seventy-five cents. And it was proved by Joshua Mauran, Jr., that the partnership continued until August, 1839, when the firm failed. That Bullus paid into the partnership stock twenty-nine thousand six hundred and ninety-five dollars and eighty-six cents, and that the witness was unable to pay anything. That at the time of forming the copartnership, his father, the defendant, was in New York, with whom he conversed relative to the terms of the partnership. That he showed his father the articles, or the minutes from which they were drawn, and is satisfied that the conditions were fully known to him. But the witness stated that he did not know of his father's having any knowledge that the firm were to settle and pay the debts owing by the witness.

The witness stated that certain loans were made by the firm to him, in anticipation of the receipts from the old concern, which were charged. After the completion of the articles of copartnership, the witness delivered to his father a paper drawn by the attorney who drew the articles, for his father's signature, and that his father did not sign the paper, but after his return to Providence sent the letter of guarantee. Many of the debts of his old concern, the witness stated, became due before sufficient funds could be collected from the same to meet them, and these debts were paid by the firm. That this was a mode of settlement of the accounts of the old concern, not originally contemplated. His father often inquired what the deficiency of the old concern would amount to, but he did not know, to the knowledge of the witness, that the old concern was indebted to the firm.

That the firm, on their failure, assigned all their property and estate to William D. Robinson, including the debts of the old concern, which amounted to the sum of twelve thousand four hundred and eighteen dollars and ninety-five cents. These debts were credited to the stock of Joshua Mauran, Jr., and at the time they were all, except one of George Bucklin, of about eighteen hundred dollars, considered bad; and that one had been released, though the witness considered him bound in honour to pay it. Various accounts between the firm and Joshua Mauran, junior and senior, and other persons, were given in evidence.

The defendant introduced his son Suchet Mauran as a witness who stated that his father brought with him on his return from New York, about the 8th of September, 1836, a bond, binding him to pay the debts of Joshua Mauran, Jr. It was under seal, and the witness read it; and it was, as he believes, in the handwriting of Mr. Bonney, of the city of New York, who wrote the articles of copartnership. That his father would not sign the bond, but sent the letter of guarantee. The bond remained among the loose papers of his father for some time, but after a diligent search could not be found. That the bond, by its terms, required his father to pay all the outstanding debts of Joshua Mauran, Jr., to his creditors, or to whoever might pay them.

The evidence being closed, the defendant below moved the Court to give the following instructions:

1. That said letter of guarantee of the defendant, dated the 9th of September, contained no authority to the said Mauran and Bullus to pay any part of the debts of the said Joshua Mauran, Jr.'s old concern; that if it authorized any payment of said debts by any person, it was by the said Edward Bullus alone; and that the said Edward Bullus could not recover said sum of five thousand four hundred and three dollars and seventy-five cents, or any part thereof; inasmuch as he had paid no part thereof, the whole having been paid by the said Mauran and Bullus.

Which instruction the Court refused to give, as prayed for; on the contrary, they instructed the jury that if, from the evidence submitted to them, they were of opinion that at the time of signing said letter of guarantee, it was understood both by the plaintiff and the defendant, that the plaintiff was to be at liberty to

pay the said debts of the said Joshua Mauran, Jr., either out of his own private funds or out of the partnership funds of the firm of Mauran and Bullus; and, in either case, the plaintiff was to be entitled to indemnity therefor, under and in virtue of the said letter of guarantee; and if they were of opinion from the facts in said case, that no funds whatsoever had been paid into the partnership by the said Mauran, Jr., as a part of the capital stock thereof, and that all the capital stock had been paid by the said Bullus; and that he was and still remained a creditor of the firm to the full amount of such capital stock; then the plaintiff was entitled to recover in the present suit, such sums of money as he had paid in discharge of the said debts of Mauran, Jr., either out of his own private funds or out of the funds of the said firm of Mauran and Bullus, for which he had not otherwise received any indemnity.

2. And the defendant's counsel prayed the Court further to instruct the jury that, even if said letter had imposed upon said defendant any obligation to pay said debts to the said Edward Bullus, or to the said Mauran and Bullus; that the said Mauran and Bullus by assigning the uncollected debts due to the said Joshua Mauran, Jr., to the said Robinson, their assignee, and placing them entirely beyond the control, or agency and management of the defendant, had discharged the defendant from any liability which might originally have arisen from said letter of guarantee.

Which instruction the Court refused to give; but instructed the jury that, if they should find a verdict for the plaintiff, they ought to deduct from the amount of the plaintiff's claim in the writ, the full value of the debts of the said Mauran, Jr., so assigned, and charge it against the claim of the plaintiff, and render a verdict in his favour for the balance only, after such deduction.

To the instructions refused and those given the defendants excepted."

The jury, under the instructions of the Court, found a verdict in favour of the plaintiff for three thousand seven hundred and sixty-four dollars and twenty-five cents, on which a judgment was entered. The defendant prosecuted this writ of error.

The case was argued by Mr. Whipple, for the plaintiff in

error; and by Mr. Z. Collins Lee and Mr. Southard, for the defendant.

Mr. Whipple contended that the obligation of Joshua Mauran as contained in his letter of guarantee of 9th September, 1836, to Edward Bullus, was confined to an agreement to bear him harmless in regard to the closing up and settlement of the former business of Joshua Mauran, Jr., and against any loss or liability he might sustain from the former business of Joshua Mauran, Jr. It did not contemplate the interference of Joshua Mauran, Jr., in the closing up of that business, nor that any money of the firm of Mauran and Bullus should be taken to pay the former debts of Joshua Mauran, Jr. If, contrary to this understanding of his responsibility, Mr. Bullus had acted otherwise, he had no claim under the letter of guarantee.

That the said letter of guarantee of the 9th of September, contained no authority to Mauran and Bullus, or to Edward Bullus to pay any part of the debts of Joshua Mauran, Jr.; but that it was a simple indemnity against any damage which the said Edward Bullus might unavoidably sustain from the closing up of the former business of Joshua Mauran, Jr.

The construction given to the letter by the Court below, imposed upon the defendant a present liability for the whole amount of the debts of Joshua Mauran, Jr., whatever the amount might be. Whereas, the case shows that such a liability was proposed to the defendant by Edward Bullus, and rejected by the defendant; this simple indemnity against unavoidable injury being substituted in its stead.

The letter being addressed to Edward Bullus before the copartnership of Mauran and Bullus, and in contemplation thereof, cannot be considered as a contract with any other person than Edward Bullus. That the plaintiff so considers it by bringing the action in the name of Bullus; and that in order to support the action, it is necessary to prove a payment and advance of money by said Bullus individually. Consequently, that a payment from the funds of Mauran and Bullus, by the authority of Mauran and Bullus, will not support said action in the name of Edward Bullus. Story on Partnership, p. 350 to 355; and authorities there cited.

Under the second exception, Mr. Whipple contended, that Mauran and Bullus, by taking the whole property of Joshua Mauran, Jr., into their possession, and upon their failure assigning the uncollected debts and other property to their assignees, instead of placing it under the management of the defendant, have assumed the ownership of the debts and other property, and discharged the defendant from any liability, if any liability ever existed.

Mr. Z. Collins Lee, and Mr. Southard, for the defendants in error, contended,

1. That the letter of guarantee in question was an absolute and unequivocal indemnity to Edward Bullus, against all loss and damage in settling up the old concern of Joshua Mauran, Jr.; and could be construed in no other way, and must be liberally interpreted according to the fair intentions of the parties to it.

2. That being a guarantee to Edward Bullus, individually, and he alone being the party to the contract, he was alone injured, and therefore the suit was properly brought in his own name, and not that of the firm—and it made no difference in principle, whether he paid the advances out of the partnership fund or not. As in point of fact he had furnished all the capital to the new firm, and it was therefore his own fund.

The following cases as to the first point, (Construction of letters of guarantee) were cited. Mason v. Pritchard, 12 East, 227; Flagg v. Upham, 10 Pick. 147; Drummond v. Prestman, 12 Wheat. 519; Douglass v. Reynolds, 7 Peters, 117; and Lee v. Dick, 10 Peters, 490.

On the 2d point: cited Collyer on Partnership, 446, 447; Gow on Partnership, 123; Story on Partnership, 354. Also the cases of Alexander v. Barker, 2 Cromp. & Jervis, 133, 138; Robson v. Drummond, 2 Barn. & Adol. 83, and the counsel referred generally to the cases named in the note to Story on Partnership, 354.

Mr. Justice M‘Lean delivered the opinion of the Court.

Mr. Justice M‘Lean after stating the facts, said,

The questions in this case arise on the instructions of the Court; and they, very properly, as we think, refer the jury to the facts and circumstances under which the guarantee was given. It is

2 y 2

only by such reference that that instrument can be correctly understood and construed.  In the construction of all instruments, to ascertain the intention of the parties is the great object of the Court; and this is especially the case in acting upon guarantees.

The guarantee under consideration, in the first place, refers to the fact that Bullus, to whom it was addressed, was about to form a connection in the mercantile business in the city of New York, with the son of guarantor.  And from the evidence, it appears that he was well acquainted with the nature and extent of that partnership, for he had read the articles of copartnership, or the memoranda from which they were drawn.  As it appears from the statement of Bonney, that the articles were drawn in August, and placed in the hands of Bullus, who returned them with the blanks filled and some alterations, there can be little doubt that the defendant below read them while at New York.  That he was well acquainted with the conditions of the partnership his son testifies.

With this knowledge we come to the next sentence in the guarantee, which is, " And as the said Joshua Mauran, Jr., having been, and is at this time prosecuting mercantile business in that city, on his own account."

It will be recollected, that in the articles of copartnership, Joshua Mauran, Jr., covenanted that he would give to his partner satisfactory security that he would pay all the debts which he then owed, and all the responsibilities incurred by him, in carrying on his former business, without drawing upon the partnership fund.  Of this covenant, the defendant below not only had full notice, but it was proved that on his return from New York to Providence, he took with him a bond drawn by the person who drew the articles of copartnership, binding him to pay the debts of his son.  This bond he did not execute, but wrote to Bullus the letter of guarantee.

With these facts in view, after stating the fact that his son had been in business in New York as above, and that Bullus was about commencing a partnership with him, the defendant says, " Now, therefore, in consideration of the same, and at the request of Joshua Mauran, Jr., I hereby agree to bear you harmless, in regard to the closing up and settlement of the said Joshua Mauran, Jr.'s former business. And I hereby guaranty you against

[Mauran v. Bullus.]

any loss you may sustain from the former business of said Joshua Mauran, Jr."

Now looking at the facts connected with the guarantee, and the circumstances under which it was given, there would seem to be no doubt of the understanding and intention of the parties. Bullus having a capital of nearly thirty thousand dollars, he was unwilling to advance it as the stock of the new firm unless he should be indemnified against the debts which had grown out of the former business of his partner. And Joshua Mauran, Sen., with the view of securing so considerable a capital, and so advantageous a connection in business for his son, was willing to indemnify Bullus against these debts. And he preferred the guarantee to the bond which was prepared. The latter would have imposed an unconditional obligation to pay these debts, whilst the former only required him to pay Bullus the sum advanced by him in discharge of them.

But it is earnestly contended that as these debts were paid by the firm, and not by Bullus only, he cannot maintain an action in his own name on the guarantee. It is very clear that the firm could not maintain an action on this instrument. The indemnity was personal and limited to Bullus.

But the best answer to this argument is the finding of the jury, under the instruction of the Court. They were instructed "that if, from the evidence, they should find that at the time of signing the letter of guarantee, it was understood both by the plaintiff and the defendant, that the plaintiff was to be at liberty to pay the debts of Joshua Mauran, Jr., either out of his own private funds, or out of the partnership funds; and in either case the plaintiff was to be entitled to indemnify therefor, under the letter of guarantee," &c., they should find for the plaintiff. They did so find, and consequently the facts hypothetically stated in the instruction are established. And the only question that can arise on this part of the instruction is, whether the facts found were properly submitted to the jury.

Now, out of what fund these debts were to be paid could not be a matter of any importance, it would seem, to the guarantor. The objection that Bullus cannot recover, because the debts were paid with the partnership funds, under the circumstances, it purely technical. Every dollar of the money thus paid, though used in

the partnership name, was in fact the money of Bullus. To meet this technical objection, and carry out the intention of the parties, we think the instruction was proper. The facts on which it was founded did not contradict the written agreement, nor, in any degree, affect the liability of the party beyond the clear import of the guarantee.

By the articles of copartnership either partner, with the consent in writing of the other, might withdraw from the firm any amount of money. This was known to the guarantor. And also the fact that the whole capital of Bullus was paid into the firm. If this be admitted, it followed that any payments made by Bullus in discharge of the debts, could only be paid out of the firm.

The jury also found in pursuance of the latter part of the same instruction, that Bullus was a creditor of the firm to the full amount of its capital stock.

These facts, found by the jury, disembarrass the case from the technicalities thrown around it by the counsel of the guarantor. They show that it was the understanding of the guarantor that Bullus should be indemnified against the previous debts of his partner, whether he paid them out of the partnership fund or otherwise.

The construction that the guarantor is only bound to indemnify, in case payment of these debts had been enforced against Bullus by legal measures, is not sustained by the words of the instrument.

In the first place, he was not and could not be made legally responsible for these debts. The guarantor then must have contemplated a voluntary payment, or at least not a payment by legal compulsion. The guarantor agrees to bear Bullus "harmless in regard to the closing up and settlement of the said Joshua Mauran, Jr.'s former business." Here is a strong recognition of an agency by Bullus in the settlement of these debts. To sustain the credit of the firm it was necessary to pay the debts in question; and we find that in a very short time after the firm commenced business, the payments of these debts were commenced, and such payments were made from time to time by the firm until near the time of its failure. The moneys received from the debts due to the previous concern were credited on the books of the firm, and the payments made by it on the

same account were charged. But the mode of keeping the account by the firm can have no bearing in the case, as the facts found by the jury obviate all objections on this ground.

Suppose Bullus had been charged on the books of the firm, with the moneys paid in discharge of the debts; the objection as to the partnership interest could not in that case be made. But the money thus applied would have been no more the money of Bullus than that which was paid by the firm. The facts found by the jury present the case in its true character, and give a strong equity to the plaintiff below. Generally, all instruments of suretiship are construed strictly, as mere matters of legal right. The rule is otherwise where they are founded on a valuable consideration. But in the present case the relationship of Mauran the partner and the guarantor, connected with the other circumstances, constitute as clear a case for indemnity as could well be imagined. That the debts of Mauran, Jr., were paid by Bullus or with his assent, in virtue of the guarantee, there is no reason to doubt. Indeed this fact is substantially found by the jury.

The assignment by the firm of the uncollected debts of Joshua Mauran, Jr., to Robinson, does not release the guarantor. In this respect the instruction of the Court was correct. The jury were directed if they should find for the plaintiff, to deduct from the amount thus found the full value of the debts of Joshua Mauran, Jr., which had been assigned by the firm, and render a verdict for the balance.

The debts of Mauran, Jr., assigned by the firm were proved to be bad, with but one exception; and that appears to have been deducted by the jury from the sum paid by the firm, in discharge of those debts.

Upon the whole we are satisfied that substantial justice has been done between the parties, by the judgment of the Circuit Court; and we think there is no principle of law arising out of the instructions which require a reversal of the judgment. It is, therefore, affirmed.