## RINDGE *v.* JUDSON.

A contract to be "accountable that B will pay you for glass, paints, &c., which he may require in his business, to the extent of fifty dollars," is a continuing guaranty. The limitation is not of the credit to B, but of the extent of the guarantor's liability.

The doctrine of *Gates* v. *McKee* (3 Kern., 232), re-affirmed.

APPEAL from an order of the Supreme Court at general term in the third district, reversing a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought upon the following guaranty:

"Mr. Rindge, Sir: I will be accountable to you that Mr. Butler will pay you for a credit on glass, paints, &c., which he may require in his business, to the extent of fifty dollars.

"Dated, Nov. 29th, 1858.

"D. C. JUDSON."

The referee found "that the plaintiff was, at the time, a dealer in glass, paints, &c., at Ogdensburgh, New York; and J. W. Butler, the individual named in the guaranty, was, at the date thereof, a glazier and manufacturer of sash and blinds at Ogdensburgh, aforesaid, and, at the date of said guaranty,

was indebted to the plaintiff in the sum of $33.48; that the plaintiff, relying upon the guaranty, delivered to said Butler glass, paints, &c., as required in his business, at divers times between Nov. 29, 1858, and June 2, 1859, to the amount of $170.95.

" That Butler made payments; so that on the fourth day of July, 1859, there was due on said account a balance of $74.18; and that Butler was insolvent." And, as a conclusion of law, the referee held " that the equitable and legal import and meaning of the contract executed by the defendant was, and should be construed to be, a limitation as to the extent of the defendant's liability, and not a limitation of credit to said Butler."

· The Supreme Court reversed the judgment of the referee, on the ground that contracts of this nature were *strictissimi juris;* that the contract before us employed the singular term, " a credit," not several, nor a continuous credit; and that its language could not be extended by construction beyond its strict sense and meaning. The plaintiff appealed to this court. The case was submitted on printed arguments.

*Francis A. Bacon,* for the appellant.

*Bishop Perkins,* for the respondent.

JAMES, J. The principal question for adjudication is whether the instrument sued on is or is not a continuing guaranty. As was said by Justice DENIO in *Gates* v. *McKee* (3 Kern., 232), " if this were the first time that an instrument of this character had come before the courts, and we were called upon to construe it without reference to adjudged cases, we would find no difficulty in holding that the limit of fifty dollars had reference to the amount of the defendant's liability rather than the amount of dealing between Butler and Rindge."

Had the guarantor desired or intended to limit his responsibility to a single transaction, or to several transactions not exceeding that sum in all, it was so easy to have said it in

plain and unmistakable terms, that if he has failed to do so, and by equivocal language induced the guarantee to part with goods, he should be held to abide the consequences.

Except to demonstrate principles, not much aid can be obtained from adjudged cases in determining questions of this kind; because each case must depend mainly upon the terms of the instrument, and it is scarcely possible that two instruments should be precisely alike. The cases upon this question do not all agree upon the principle by which such agreements should be construed; and I think this case must turn mainly upon the question whether the contract is to be strictly construed, or whether it is to be construed like other instruments. I had supposed the question disposed of by this court in *Gates* v. *McKee* (*supra*), but as the Supreme Court has seen fit to question the correctness of that decision, it may not be inappropriate to refer again to the cases bearing upon that subject.

The leading English case is *Mason* v. *Pritchard* (12 East., 227), where it was laid down by the court that "the words were to be taken as strongly against the party giving the guaranty as the sense of them would admit." That case was followed by *Hargrave* v. *Smee* (6 Bing., 244), where Chief Justice TINDAL said: "The question is, what is the fair import to be collected from the language used in this guaranty? The words employed are the words of the defendant, and there is no reason for putting on a guaranty a construction different from that which the court puts upon any other instrument. With regard to other instruments the rule is, that if the party executing them leaves anything ambiguous in his expressions, such ambiguity must be taken most strongly against himself." PARK, J., said "the only question of principle which has been agitated on the present occasion is whether these instruments are to be construed strictly; and I am not disposed to hold the doctrine which has been imputed to Lord WYNFORD, that a guaranty ought to receive a strict construction. That was not the principle adopted in *Mason* v. *Pritchard* by Mr. Baron WOOD, who tried the cause, and the very learned persons who decided it."

Rindge *v.* Judson.

In *Brooks* v. *Haigh* (10 Adol. & Ellis, 323), in the Exchequer Chamber, Lord ABINGER said: "It is the opinion of all the court that there was in the guaranty an ambiguity that might be explained by evidence, so as to make it a valid contract." So again in *Mayer* v. *Isaac* (6 Mees. & Wels., 629), upon citation by counsel of the case of *Nicholson* v. *Paget* (5 C. & P., 395), holding that a party furnishing goods on the faith of a guaranty was bound to see that it was couched in such words as that the guarantor might distinctly understand to what he was binding himself. Baron PARKE interrupted counsel, and inquired: "Do you find any other authority to support the rule of construction there laid down? It is certainly at variance with the general rule of the common law, which is that the words of an instrument are to be taken most strongly against the party using them. A guaranty is one of that class of obligations which is binding only on one of the parties, until the other chooses by his own act to make it binding on him also. This instrument does not contain the words of both parties, but of one only, the defendant; the plaintiff agrees to nothing on the face of it," and in pronouncing the judgment of the court, Baron ALDERSON said, "the generally received principle of law is, that the party who makes any instrument should take care so to express the amount of his own liability as that he may not be bound beyond what it was his intention that he should be; and, on the other hand, that the party who receives the instrument, and parts with his goods on the faith of it, should rather have a construction put upon it in his favor, because the words of the instrument are not his, but those of the other party; and, therefore, if I were obliged to choose between the two conflicting principles which have been laid down on this subject, I should rather be disposed to agree with that given in *Mason* v. *Pritchard*, than with the opinion of BAGLEY, B., in *Nicholson* v. *Paget.*"

The principle of these cases was recognized in *Bainbridge* v. *Wade* (1 Eng. L. & Eq. R., 236), and in *Broom* v. *Batchelor* (37 id., 572, 1856).

I have not been able to find that the case of *Mason* v. *Pritchard* has ever been questioned of late years, and never directly, except by the case of *Nicholson* v. *Paget;* which latter case, as is shown, has been often repudiated. This principle certainly was not questioned in *Melville* v. *Hayden* (3 Barn. & Ald., 593). That case only questioned the construction given to the guaranty, and not the rule by which it was to be construed. But if it were otherwise, the later decisions of the same court have disregarded it, and followed the principle of *Mason* v. *Pritchard.*

The decisions in the United States Supreme Court upon this question are equally emphatic and conclusive. To take them up in their inverse order of time, I will refer, first, to the case of *Laurence* v. *McCalmont* (2 How., 426, 449), where STORY, J., said: "Some remarks have been made, on the argument here, upon the point, in what manner letters of guaranty are to be construed; whether they are to receive a strict or a liberal interpretation. We have no difficulty whatever in saying that instruments of this sort ought to receive a liberal interpretation. By a liberal interpretation, we do not mean that the words should be forced out of their natural meaning, but simply that the words should receive a fair and reasonable interpretation, so as to attain the objects for which the instrument is designed, and the purposes to which it is applied. We should never forget that letters of guaranty are commercial instruments, generally drawn up by merchants in brief language, sometimes inartificial, and often loose in their structure and form; and to construe the words of such instruments with a nice and technical care, would not only defeat the intentions of the parties, but render them too unsafe a basis to rely on for extensive credits. The remarks made by this court in *Bell* v. *Bruen* (1 How., 169–186), meet our entire approbation. In the latter case, the court said: 'We think the court should adopt the construction which, under all the circumstances of the case, ascribes the most reasonable, probable and natural conduct to the parties.' In the language of this court in *Douglass* v. *Reynolds* (7 Pet., 122), 'Every

*Rindge v. Judson.*

instrument of this sort ought to receive a fair and reasonable interpretation, according to the true import of its terms. It being an engagement for the debt of another, there is certainly no reason for giving it an expanded signification, or liberal construction, beyond the fair import of its terms.' Or, it is 'to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety; as declared in *Lee* v. *Dick* (10 Pet., 493). The presumption is, of course, to be ascertained from the facts and circumstances accompanying the transaction." It was further said, in the case of *Douglass* v. *Reynolds* (*supra*), "As these instruments are of extensive use in the commercial world, upon the faith of which large credits and advances are made, care should be taken to hold the party bound to the full extent of what appears to be his engagement; and for this purpose, it was recognized by this court in *Drummond* v. *Prestman* (12 Wheat., 515), as a rule in expounding them, that the words of the guaranty are to be taken as strongly against the guarantor, as the sense will admit."

The cases of *Cremer* v. *Higginson* (1 Mas., 323), and *Mauran* v. *Bullus* (16 Pet., 537), are often cited—and were in the opinion of one of the justices of the Supreme Court in reversing the judgment of the referee in this case—as containing a different rule. *Cremer* v. *Higginson* was a circuit decision of Justice STORY, made in 1817, wherein he said, "the language of a letter should be very strong that would justify a court in holding the guaranty to be a continuing guaranty, which is to cover advances from time to time to the stipulated amount, *toties quoties*, until the guarantor shall give notice to the contrary. I see nothing in this letter to justify such a conclusion; and, in every doubtful case, I think the presumption ought to be against it." As this decision upon the question under consideration is directly opposed to the subsequent decisions of the same court at bar, the opinions in some of which were pronounced by the same learned judge, the case cannot now be regarded as authority. In the case of *Mauran* v. *Bullus*, the question here under consideration was

not before the court. It is true, that Justice McLean in that case said: "Generally, all instruments of suretyship are construed strictly, as mere matters of legal right;" but the question here is as to the rule of construction.

The rule, as laid down in *Mason* v. *Pritchard*, prevails in Massachusetts, *Bent* v. *Hartshorn* (1 Met., 24), and in Connecticut, *Rapelje* v. *Bailey* (5 Conn., 149). It was long ago adopted in this State. Bronson, J., in *Dobbin* v. *Bradley* (17 Wend., 422), said: "In this, as in other cases, such a construction should be put upon the contract as will carry into effect the intention of the parties. The extent of the obligation must be ascertained by considering the language of the instrument, and the nature of the transaction to which it relates. Commercial guaranties are in extensive use; and I can perceive no reason why they should not receive the same liberal construction, for attaining the end the parties had in view, as is given to other contracts;" citing *Douglass* v. *Reynolds*, and *Hargrave* v. *Smee*.

These authorities are ample to show the soundness of the rule adopted by this court in *Gates* v. *McKee* (*supra*), viz.: "That when the question is as to the meaning of the written language in which a guarantor has contracted, there is no difference, and there ought not to be any, between the contract of a surety and that of any other party."

Such being the rules of interpretation, it now becomes necessary to apply them to the instrument under consideration.

Looking at the facts of this case, the situation and business of the parties and the circumstances under which the guaranty was given, there would seem to be no doubt that its purposes were not fully accomplished when the person whose credit was intended to be aided had once contracted a debt to the plaintiff of $50, and had paid it.

Butler was a manufacturer who needed glass, paints, &c., in his business, and he desired a credit with a dealer for that purpose. Rindge was a dealer in those articles, and to establish a credit with Rindge to the extent of fifty dollars, Butler procured the guaranty in question, and Rindge gave him a credit

Rindge *v.* Judson.

on the faith of it. The purpose of Butler, as well as the under-
standing of Rindge, is clearly apparent, and the construction
given to the instrument by Rindge was that which any person
knowing the parties and their situation would naturally apply
to it to facilitate the purposes it seemed designed to accomplish.
It was for a credit on paints, glass, &c., required in Butler's busi-
ness to the extent of fifty dollars—not for a credit of fifty
dollars' worth of glass, paints, &c. Had the guarantor designed
a single credit it was so easy to have said it in plain terms,
that the elaborate expressions of this instrument were cal-
culated to mislead.

Much stress was laid upon the words "a credit" by the
Supreme Court. These words, however, were not used in a
limited or restricted sense, but in an enlarged and commercial
sense, as implying reputation and confidence; a basis on which
Butler might trade as he desired without payment, to the
extent limited. Had a single transaction been contemplated
no allusion to the business of Butler was necessary or natural,
but looking to a continuous credit, the restriction to such glass,
paints, &c., as he should require in his business, was very
natural and proper. The use of such words in the instrument
in the absence of an express limitation as to time, naturally
induced the belief in the mind of the guarantee, that the instru-
ment was intended to aid Butler in the prosecution of his busi-
ness.

The rule is that whenever by the terms of the undertaking,
or by the recital in the instrument, or by reference to the cus-
tom or course of dealing between the parties, the guaranty
would seem to look to a future course of dealing for an indefi-
nite time, or a succession of credits, it is to be deemed a con-
tinuing guaranty and the amount expressed is to limit the
amount for which the guarantor is to be responsible, and not
the amount to which the dealing or whole credit given is to
extend. Viewed by either rule, the instrument under conside-
ration would seem to look to a future and continual course of
dealing between Butler and Rindge; and not to a single trans-
action or to dealings between them to a particular amount.

If such was not the intention of the guarantor his undertaking was susceptible of that interpretation, and the plaintiff having given it that construction and relied upon it, it should, upon the principles of construction settled by the cases cited, receive such interpretation as would protect him from loss.

This case bears so strong a resemblance in its facts to that of *Gates* v. *McKee* (*supra*), that they cannot well be distinguished, and each should receive the same construction. In the one case the order was addressed to Mr. Gates, in the other to Mr. Rindge; in the one the promise was to be responsible, in the other to be accountable; in the one the guaranty was "for what stock McKee has had or may want hereafter to the amount of $500;" in the other it was "for a credit on glass, paint, &c., which Butler may require in his business to the extent of $50." Unless this court is prepared to overrule the principle upon which the decision of *Gates* v. *McKee* was based, then the judgment of the general term should be reversed, and judgment final entered for the plaintiff.

COMSTOCK, Ch. J., SELDEN, DENIO, LOTT and HOYT, Js., concurred; MASON, J., dissented; DAVIES, J., did not sit in the case.

Judgment reversed, and judgment final for plaintiff.