Crist *v.* Burlingame.

———————◆———————

## JOHN CRIST *vs.* R. W. BURLINGAME.

62  351
127a 424

62b 351
15ap178

62b 351
21ap415

In construing guaranties, the real inquiry is, what was the intention of the guarantor; and to ascertain this, his words must be taken in their popular and obvious sense. That is the true meaning of the contract which readily presents itself to a plain man of common understanding, on reading it attentively and impartially, and not that which is elaborated with effort. The agreement is not to be construed most favorably for the guarantor, nor most strongly against him.

It is settled by the recent decisions in New York, Massachusetts and Connecticut, and in the Supreme Court of the United States, 1st. That guaranties are governed by the same rules of construction as other contracts. 2d. That in case of ambiguity, the language is construed most strongly against the guarantor. 3d. That it is the duty of the court to ascertain and give effect to the intention of the parties.

Another rule—partly of evidence, and partly of construction—applies to this class of contracts, as well as all others, viz., that in order to arrive at the intention of the parties, the circumstances under which, and the purposes for which, the contract was made, may be proved, and must be kept in view in its construction.

When, by the terms of a guaranty, it is evident the object is to give a standing credit to the principal, to be used from time to time, either indefinitely or until a certain period, then the liability is continuing; but when no time is fixed, and nothing in the instrument indicates a continuance of the undertaking, the presumption is in favor of a limited liability, as to time. whether the amount is limited or not.

A. B. having just commenced the commission business, at Dunkirk, and need-
ing some person of means or credit who would accept his drafts for small
sums, from time to time, to enable him to make advances to those consign-
ing property to him, which advances were to be reimbursed on sale of the
property, applied to the plaintiff, a commission merchant in New York, to
accept his drafts, agreeing to consign the property to him for sale. To
secure the plaintiff for such acceptances as he might make for A. B., the de-
fendant addressed the following letter to the plaintiff: "I will be and am
responsible for any amount for which A. B. may draw on you, for any sum
not to exceed $1500, on condition of your acceptance of the same."

*Held* that this was a continuing guaranty. That it was clearly the intention
of the parties to make it so; and although the language used was capable
of a more restricted operation, it was nevertheless such as to enable the
court to give effect to the intention of the parties, by holding it to be a con-
tinuing security, and as not satisfied by the payment of acceptances to the
extent of $1500.

APPEAL from a judgment, entered upon the report of
Hon. Wm. J. Bacon, sole referee.

The action was brought to recover against the defend-
ant, upon the written agreement or guaranty of the de-
fendant, of which the following is a copy:

"DUNKIRK, August 26th, 1859.

JOHN CRIST, Esq:

Dear Sir:—I will be and am responsible for any
amount for which A. Burlingame may draw on you, for
any sum not to exceed $1500, on condition of your accept-
ance of the same.

Yours truly,      R. W. BURLINGAME."

The referee found and reported the following facts:

On or about the 26th day of August, 1859, the plaintiff
made, with one Alexis Burlingame, the agreement set
forth in the complaint, to accept and pay for him, in the
city of New York, drafts to be drawn by said Burlingame,
upon the plaintiff, for the accommodation of said Burlin-
game, and for and on account of produce and merchan-
dise, to be sent and forwarded to New York, from time to
time, for an indefinite period thereafter. To secure and
indemnify the plaintiff for the acceptance and payment of

such drafts, the defendant executed and caused to be delivered to the plaintiff the written agreement and guaranty, given in evidence on the trial, upon the strength and credit of which the said plaintiff did, from time to time thereafter, accept and pay, for and on account of said Alexis Burlingame, drafts by said Burlingame drawn upon him to the aggregate amount of over $7000, but the amount of drafts outstanding at any one time did not exceed $1500. The liability upon the said guaranty was not, in terms, nor was it by any agreement of the parties, to be confined to drafts drawn in respect to flour or any particular article of produce, but funds remitted to the plaintiff, and the avails of produce sold, are to be applied; without discrimination, to all drafts drawn upon the plaintiff by Burlingame, and such funds were so applied, and after making such applications, there remained due to the plaintiff for and on account of drafts drawn upon and paid by him, under the said agreement and guaranty, the sum of $934.79 on the 22d day of November, 1860, which, with interest to the date of the report, amounted to the sum of $996.59.

Upon the foregoing facts the referee found, as a conclusion of law, that the agreement of the defendant was designed to give a standing credit to Alexis Burlingame, to be used, from time to time, to the extent of $1500, as the ultimate liability; that it did not contemplate or provide for a single transaction, or become exhausted when drafts to the extent of $1500 had been drawn and accepted, but that it was a continuing guaranty, and intended to and did provide for a continuous business—no limits as to time—and only restricted as to the amount of liability, and was a standing credit to the amount therein. And that the plaintiff was entitled to a judgment for $996.59, with costs, for which sum judgment was accordingly ordered.

The defendant appealed.

---

Crist *v.* Burlingame.

---

*Hunt & Waterman,* for the appellant.

*A. H. Prescott,* for the respondent.

*By the Court,* MULLIN, J. I have examined a great number of cases in the English as well as American reports, in which the construction of guaranties has been involved, hoping to deduce from them some principle which would enable us to decide the case at bar, without adding another to the multitude of cases which rest on their own facts, and are supported only by the adjudications in the cases themselves. I very much doubt whether it is possible to arrive at any principle which can be followed, except in now and then a case, for the reason that so much must always depend on the language of the guaranty, and still more on the intention of the parties, as derived from the guaranty and the circumstances under which it is drawn, that rules become general in the terms used to express them, but few cases will occur to which they will apply. Burrough, J., in *Hargreave* v. *Smee,* (6 *Bing.* 243,) hoped that the time would come when more reliance would be placed on principles than on cases, and I fully concur with him in the wish. But as no advance has been made, in a century, in that direction, the prospect is not flattering for the future.

The courts have differed very much as to the rules by which guaranties should be construed, and this has doubtless led to much of the confusion that is found in the cases. In *Mason* v. *Pritchard,* (12 *East,* 227,) it is said the words are to be taken as strongly against the party giving the guaranty as the sense of them would admit of. Bayley, B., in *Nicholson* v. *Poget,* (1 *C. & M.* 48,) declared it to be the duty of the party who takes a guaranty to see that it is couched in such words as that the party giving it may distinctly understand to what extent he is binding himself. In *Mayer* v. *Isaac,* (6 *Mees. & Welsb.* 605,) the above rule

of Bayley, B., was questioned, and the general rule was declared to be, that the words of every instrument shall be taken most strongly against the party using them. (*See also,* 12 *Wheat.* 515)   Chief Justice Marshall, in *Russell* v. *Clark's ex'rs,* (7 *Cranch,* 97,) said that the law will not compel a man to pay a debt growing out of a transaction in which he has no interest, unless he has manifested a clear intention to make himself liable. (*Cramer* v. *Higginson,* 1 *Mason,* 323.)   Lord Ellenborough, in *Merle* v. *Wells,* (2 *Campb.* 413,) says : "If a party means to be surety for a single dealing he should take care to say so." Chancellor Kent, (3 *Kent's Com.* 124,) lays down the rule thus : "A guaranty is to be construed liberally for the purpose of ascertaining its latitude, or the interests of the parties to it.   Justice Story, in *Lawrence* v. *McCalmont,* (2 *How.* 426,) expresses the rule in nearly the same language, but qualifies it by saying : "By a liberal interpretation we do not mean that the words shall be forced out of their natural meaning, but simply that the words should receive a fair and reasonable interpretation, so as to attain the object for which the instrument is designed, and the purpose to which it is applied."   At another place, in the same opinion, the learned judge says: "If the language be ambiguous, and admits of two fair interpretations, and the guarrantee has advanced his money on the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor, for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words by which the other party is misled to his injury."   That these various rules of construction cannot be harmonious, is quite obvious, and we are left to follow those prescribed by our own courts, if we have any, which will aid us in coming to a correct construction of the guarranty under consideration.

In *Gates* v. *McKee,* (3 *Kern.* 232,) Denio, J., adopts with approbation the rules laid down by Judge Story in the

case above cited. In *Fellows* v. *Prentiss*, (3 *Denio*, 512,) Hand, Senator, seems to be of the opinion that the rules of construction applied in *Mason* v. *Pritchard* and *Merle* v. *Wells*, is the correct one, and yet he approves of the proposition put forth by Judge McLean, in *Mauran* v. *Bullus*, (16 *Peters*, 537,) that generally all instruments of suretyship are construed strictly as mere matters of legal right. Chief Justice Hosmer, in *Hall* v. *Rand*, (8 *Conn.* 560,) lays down what seems to me is the only true rule of construction to be applied to these instruments. He says: "The real inquiry is, what was the intention of the defendant; and to ascertain this, his words must be taken in their popular and obvious sense. That is the true meaning of the contract which readily presents itself to a plain man, of common understanding, on reading it attentively and impartially, and not that which is elaborated with effort. * * * It is an unfounded position, that in the construction of mercantile agreements, a peculiar liberality should be exercised * * * The agreement in question is not to be construed most favorably for the defendant, nor most strongly against him." This does not exactly harmonize with the language of the same learned jurist, in *Rapelye* v. *Bailey*, (5 *Conn.* 149.) In that case he says the words of the contract ought to be taken as strongly against the defendant as the sense of them will admit. If by this is meant that when the language is susceptible of two constructions, one favorable to, and the other against the guarantor, it shall receive that construction most favorable to the guarantor, it is doubtless correct. In *White* v. *Reed*, (15 *Conn.* 457,) the court, after reviewing the English cases, and some of the American cases, comes to the conclusion that guaranties are to be governed by the same rules as other mercantile contracts, and that is, the intent of the parties must be ascertained and carried into effect, and in arriving at the intent, the language of the contract must be construed according to its plain and obvious im-

Crist *v.* Burlingame.

port. (*Whitney* v. *Groot*, 24 *Wend.* 82.) In *Walrath* v. *Thompson*, (4 *Hill*, 200,) Judge Cowen says : " Guaranties, as we have lately held in several cases, must be ascertained by the same rules, and explained by the same evidence, as other contracts. There is no reason for any distinction." But, he adds, "the words being those of the guarantor, must be taken most strongly against him." This last expression must be understood, with the qualification applied to similar language of Hosmer, J., in 5 *Cowen*, above cited. Shaw, Ch. J., in *Bent* v. *Hartshorn*, says : "The rule, as in other cases, must be to look at the whole instrument, and the circumstances and relations in which the parties stand to each other at the time of entering into the contract, and therefrom to ascertain the intent of the parties; and the intent; when thus ascertained, must govern the construction of the contract.

We may safely assume, then, that it is settled by the recent cases in this State, Massachusetts and Connecticut, and in the Supreme Court of the United States, 1st. That guaranties are governed by the same rules of construction as other contracts. 2d. That in case of ambiguity, the language is construed most strongly against the guarantor. 3d. That it is the duty of the court to ascertain and give effect to the intention of the parties. There is another rule, partly of evidence and partly of construction, which applies to this class of contracts as well as all others, and that is, that in order to arrive at the intention of the parties, the circumstances under which, and the purposes for which, the contract was made may be proved, and must be kept in view in its construction. (2 *Pars. on Cont.* 76, 77.) In addition to these general rules there are certain others which are applied by the courts in the construction of the contract of guaranty, and which have a direct application to the guaranty on which this action is brought. If the guaranty in question is not a continuing

Crist *v.* Burlingame.

guaranty this action must fail. And as the line of deviation between a guaranty which is and one which is not continuing, is not always capable of being drawn with precision or accuracy, it is quite important to find, if·we can, some rule by which to be guided in determining on which side of the line of deviation a particular guaranty is to be placed. Hand, Senator, in *Fellows* v. *Prentiss*, (3 *Denio*, 519,) lays down the rule by which to determine whether a guaranty is a continuing one, as follows: "When by the terms of the guaranty, it is evident the object is to give a standing credit, to the principal, to be used from time to time, either indefinitely or until a certain period, then the liability is continuing, but when no time is fixed, and nothing in the instrument indicates a continuance of the undertaking, the presumption is in favor of a limited liability as to time, whether the amount is limited or not. If the contract is silent, and free from all motive and consideration except voluntary assistance to a friend, I agree with Justice McLean, in *Mauran* v. *Bullus*, (16 *Pet.* 537,) that generally all instruments of suretyship are construed strictly as mere matters of legal right."

Denio, J., in *Gates* v. *McKee*, (*supra*,) approves of the rule of Senator Hand, and to some extent applies it in the case before him. Shaw, Ch. J., in *Bent* v. *Hartshorn*, (1 *Metc.* 24,) expresses the rule thus: "The principle to be extracted from numerous decided cases, we think, is this, that when, by the terms of the undertaking, by the recitals in the instrument, or by reference to the custom and course of dealing between the parties, it appears that the guaranty looked to a future course of dealing for an indefinite time, or a succession of credits to be given, it is to be deemed a continuing guaranty, and the amount expressed is to limit the amount for which the guarantor is to be responsible, and not the amount to which the deal-

Crist *v.* Burlingame.

ing or whole credit given is to extend." It seems to me that the rule stated by Senator Hand is as precise and accurate as any that can be adopted, and that it will enable us to reconcile many apparently conflicting cases which would otherwise rest merely on the assertion of the judges deciding them.

I come now to examine the guaranty on which this action is brought, and to ascertain, if I can, whether it is or is not a continuing one, by applying to it the foregoing rules. Alexis Burlingame had just commenced the commission business at Dunkirk, and to enable him to carry it on more advantageously, he desired to find some one of means or credit who would accept drafts for him for small sums, to enable him to make advances to those consigning to him property, to be reimbursed from the avails of this property when sold in New York. The plaintiff was a commission merchant, doing business in New York, and as an inducement for him to accept, for the said Alexis, the property was to be consigned to the plaintiff for sale. To secure the plaintiff for such acceptances as he might make for the said Alexis, the defendant, who was a clerk in the employ of Alexis at Dunkirk, gave the letter of credit, which is in the words following: "I will be and am responsible for any amount for which A. Burlingame may draw on you for any sum not to exceed $1500, on condition of your acceptance of the same." Having ascertained the circumstances under which, and the purposes for which the guaranty was made and given, let us now see whether the language used can, by any fair and reasonable construction, be made to give effect to the intent. That the language would be satisfied by one or more acceptances to the amount of $1500 is quite clear. But it is equally clear that it was not the intention of Alexis to ask, nor did the plaintiff understand him to ask, acceptances to the amount of $1500, and when that point

was reached the force of the guaranty was expended. It comes to this, then: Can we give effect to the intent as proved by the circumstances outside of the paper, when the paper itself will allow of a construction giving effect to such intent, or is not repugnant to it? (*Bainbridge* v. *Wade*, 1 *Law & Eq.* 236. *Hough* v. *Brooks*, 10 *A. & E.* 309.) We cannot, by parol evidence, vary the written contract, but when it will bear either of two constructions, the parol evidence will enable us to adopt the one contemplated by the parties. This guaranty may, without violence to its language, be treated as a continuing guaranty, and we must so treat it if that was the intention of the parties to it. That such was the intention seems to me, upon the evidence, perfectly obvious. Two, three or a dozen of acceptances amounting, in the aggregate, to $1500, would have been of no value to a man just entering on the commission business, and doing business with a great number of men in the course of a single business season. The object of Alexis was to procure aid in carrying on business—not for a month, or even for a season—but until some new consignment should be made. If there is any case in which a continuing guaranty can be said to be contemplated, this is one. (*Colbourn* v. *Dawson*, 70 *E. C. L.* 764.) The language of the guaranty in the case cited is not like that of the one in question, but effect was given to it as a continuing guaranty because the circumstances showed such to have been the intention of the parties, as disclosed by the parol evidence. The guaranty itself was in these words: "I hereby agree to guaranty to A. & Co., iron masters, the sum of £200, for iron received from them for B. & Co., as annexed." The guaranty was written in answer to a letter from A. & Co. informing the guarantors that they were doing business with B. & Co., and they required a guaranty to £200. And they were referred to the guarantors. This was held a continuing

guaranty. Why? Because it was quite clear that the intention of the parties was to continue a course of dealing, and that purpose could not be accomplished by sales of iron to £200, and no more. The demand for the iron was continuous; so must be the obligation of the party who became responsible for it. *Mason* v. *Pritchard*, (12 *East*, 227,) was decided on the same grounds. *Rapelyea* v. *Bailey*, (5 *Conn.* 149,) was a similar case. There the guaranty was in these words: "My brother R. is wishing to go into business in New York, by retailing goods in a small way. Should you be disposed to furnish him with such goods as he may call for, from $300 to $500 worth, I will hold myself accountable for the payment should he not pay as you and he shall agree."

It appears on the face of this undertaking that the object of the guarantor was to aid his brother in getting goods, and thus enable him to carry on his business. A single credit of $300 or $500 would not secure that end, and the intention could only have effect by declaring the guaranty to be a continuing liability. *Gates* v. *McKee*, (3 *Kern.* 232,) is substantially a similar case. In that case, also, it was shown, by parol, that the plaintiff was a tanner and currier and dealer in leather, and McKee, for whose benefit the guaranty was given, was a shoemaker, and the court was of the opinion that it was the intention of the defendant to aid McKee in carrying on his business, and effect could only be given to the intention by making the guaranty a continuing one. To the same effect is *Mayer* v. *Isaac*, (6 *M. & W.* 604.) In that case the guaranty was: "In consideration of your supplying my nephew, A. V., with china and earthern ware, I hereby guaranty the payment of any bills you may draw on him on account thereof, to the amount of £200." The plaintiff was a manufacturer of china and earthen ware, and A. V. a dealer in them, and had been dealing with the plaintiff,

and it was while thus dealing the guaranty was given. And it was held continuing. (*See also, Allan* v. *Kenning,* 23 *E. C. L.* 401. *Hargreave* v. *Smee,* 19 *id.* 117. *Bastow* v. *Bennett,* 3 *Camp.* 220. *Merle* v. *Wells,* 2 *id.* 413.)

In *Allen* v. *Pike,* (3 *Cush.* 238,) the guaranty was as follows: "I hereby make myself responsible for whatever amount D. may become indebted to either of you. I have fixed no limits to the amount as he has assured me that he shall be very cautious in getting very much in debt, and this is satisfactory." This was held to be a continuing guaranty, because it was without limit as to amount or time, and was, in its terms, a guaranty for liabilities to be created. (*See also, Bent* v. *Hartshorn,* 1 *Metc.* 24.)

I come now to the other description of guaranties which the courts have held not to be continuing, on the ground that they are satisfied by advances up to the sum named, and when that is paid the guaranty is satisfied. And I think it will be found that in none of them, with a few exceptions, which cannot be sustained on any principle, did it appear, either by parol or in the guaranty itself, that the object was to become responsible for the person in whose favor it was given, in the prosecution of any business in which a continued credit was contemplated. In *Rogers* v. *Warner,* (8 *John.* 119,) the guaranty was: "If E. W. & D. W. B., our sons, wish to take goods of you on credit, we are willing to lend our names as security for any amount they may wish." This guaranty would be satisfied by one single credit, and there is nothing in the case showing that they were purchasing for the purpose of carrying on any business, or that a continuing credit was necessary or contemplated. *Whitney* v. *Groot,* (24 *Wend.* 82,) is a similar case. The guaranty there was: "We consider J. V. E. good for all he may want of you, and we will indemnify the same." It was shown, in that case, that the plaintiffs were wholesale grocery dealers in

Crist *v.* Burlingame.

Albany, and J. V. E. a grocery dealer in Schenectady, but there was nothing to show that more than one purchase was contemplated. Nelson, J., says : " I cannot say the credit was to be extended beyond the first parcel of goods. All he may want of you, does not necessarily extend this ; it may fairly intend all he may want at the time." *Fellows* v. *Prentiss*, (3 *Denio*, 512,) was decided on the same ground. (*See also Nicholson* v. *Paget*, 1 *C. & M. Exch.* 47 ; *Kay* v. *Groves*, 19 *E. C. L.* 412.) The guaranty in *Bovill* v. *Turner*, (18 *E. C. L.* 308,) was : " You may let L. have coals to £50, for which I will be answerable at any time." Coals were delivered during many years, but finally a balance of more than £50 remained unpaid. The plaintiff was nonsuited, on the ground that it was not a continuing guaranty, and the court refused a rule to show cause why it should not be set aside. With all respect, it seems to me it was a question for the jury. L. was a dealer in coal, and the agreement to be answerable at any time might well be held to authorize a continuing credit ; but the case is so briefly stated that it is quite probable important facts are omitted. In *White* v. *Reed* (15 *Conn.* 457,) the guaranty was : " For any sum that my son G. R. may become indebted to you, not exceeding $200, I will hold myself accountable." This was held not to be a continuing guaranty. Nothing was shown to distinguish it from those above mentioned, and hence as a single credit or a series of credits, amounting in all to the sum named, would satisfy the contract, it was held that it must be thus limited. If the parties desired to extend it beyond, it was their duty to have so drawn it.

Cases might be multiplied, but it is unnecessary ; those cited fully recognize and establish the rule which seems to me to govern this case, and makes this guaranty a continuing one. It was clearly the intention of the parties to make it so, and although the language used is capable

of a more restricted operation, it is nevertheless such as to enable us to give effect to the intention of the parties, and to hold it to be a continuing security.

I am of the opinion that the judgment on the referee's report should be affirmed.

Judgment affirmed

[Oswego General Term, July 8, 1862. *Mullin*, *Bacon*, and *Morgan*, Justices.]