THE CITY NATIONAL BANK OF POUGHKEEPSIE, PLAINTIFF, *v.* WILLIAM PHELPS AND MARTIN E. KINGMAN, DEFENDANTS.

*Guaranty — when continuing — when not affected by corporate change — if made by a firm, it ceases on notice of its dissolution.*

In 1861 the firm of Phelps & Kingman executed and delivered to the City Bank of Poughkeepsie the following paper : " We hold ourselves responsible for the payment of any sum, not to exceed five thousand dollars ($5,000), Mr. C. H. Woodruff may receive of your bank for legitimate business purposes."

*Held,* that the guaranty was a continuing one.

Subsequently the bank, then a State corporation, became a national bank, under the name of the City National Bank of Poughkeepsie *Held,* that its identity was not so changed as to terminate the guaranty.

In 1863 the firm dissolved, and in 1875 notice thereof was given to the bank. *Held,* that the guaranty covered all advances made prior to notice of the dissolution, but that neither the firm nor the partners, individually, were liable for advances subsequently made.

Under such guaranty, the signers were liable for all notes discounted within six years prior to the commencement of the action, whether to renew old notes or otherwise.

MOTION for a new trial on exceptions ordered to be heard, in the first instance, at the General Term, after a verdict in favor of the plaintiff.

The action was brought to recover of the defendants as guarantors of one Woodruff the amount of certain advances made by the plaintiff to said Woodruff. The guaranty was contained in the following paper, signed by the firm of Phelps & Kingman :

" NEW YORK, *Feb.* 15, '61.
" CITY BANK, POUGHKEEPSIE, N. Y.:

" We hold ourselves responsible for the payment of any sum, not to exceed five thousand ($5,000), Mr. C. H. Woodruff may require of your bank for legitimate business purposes.

" Yours respectfully,
" PHELPS & KINGMAN."

Subsequently The City Bank of Poughkeepsie was changed into a national bank, and its name into The City National Bank of Poughkeepsie.

During the trial the action was discontinued as to Kingman. The firm was dissolved in 1863, of which notice was given to the bank in 1875. After notice of the dissolution of the firm had been received by the bank, the following letter was received from defendant Phelps:

" A. H. CHAMPLIN, Esq., *Cashier:*

" DEAR SIR — Several years since the firm of Phelps & Kingman gave your bank an obligation, holding ourselves responsible for the payment of any sum, not to exceed five thousand dollars ($5,000), Mr. C. H. Woodruff may require for legitimate business purposes. Mr. Woodruff informs me that you desire to have this obligation renewed, and Mr. Kingman declines to sign the renewal. I regarded the obligation good when given, and believe it to be just as good now as it was then, so that I do not see the slightest advantage in having it renewed. Mr. Woodruff assures me, and as he seems to be improving financially, I have no doubt he will, within a reasonable time, retire the paper for which the obligation was given. As I do not see how your bank can be prejudiced, please let the matter remain, and oblige

"Yours, very respectfully,

"WM. PHELPS."

Plaintiff claimed that by this Phelps became liable for advances made to Woodruff after the dissolution of the firm.

*Homer A. Nelson,* for the plaintiff.

*William T. Birdsall* and *Edward S. Clinch,* for the defendant Phelps.

GILBERT, J. :

The plaintiff was formerly a State bank, incorporated by the name of the city Bank of Poughkeepsie. On the 15th of February, 1861, the partnership of Phelps & Kingman gave to said bank an instrument, whereby they held themselves responsible for the payment of any sum not to exceed $5,000, which one Woodruff might require of said bank for legitimate business purposes. It

is objected that no consideration is expressed, as was required by the statute of frauds before the amendment of that statute in 1863. The contract is prospective, and the consideration of it plainly appears, namely, future advances to be made by the bank to Woodruff. That is sufficient. (*Church* v. *Brown*, 21 N. Y., 315.) The guaranty, I think, is a continuing one. It is a mercantile instrument, and should receive a liberal construction in furtherance of its object. Its purpose obviously was to furnish aid in carrying on the business of Woodruff, and it is unlimited as to time, and the limitation of amount is restrictive only of the liability of the guarantors. As was said by Lord ELLENBOROUGH in *Merle* v. *Wells* (2 Camp., 413), which was a case analogous to this, " if a party means to be surety only for a single dealing, he should take care to say so." (See *Coles* v. *Pack* [L. R.], 5 C. P., 65 ; *Mayer* v. *Isaac*, 6 M. & W., 605 ; *Clark* v. *Burdett*, 2 Hall, 217 ; *Rindge* v. *Judson*, 24 N. Y., 64.)

I think that the change of the plaintiff from a State to a National bank did not destroy either the existence or the identity of the corporation, for the same reason that a citizen of a State does not lose his identity by accepting the privileges and emoluments incident to the civil, or military, or naval service of the country. Such change conferred new franchises, and imposed new duties and responsibilities upon the corporate body in addition to those which it previously had, but nothing more. The corporate property remained ; the respective interests of the stockholders therein were not divested or altered in any sense, and the rights, powers and duties of the trustees or directors continued with only some modifications of a formal character. There was a slight change in the corporate name, but the new name designated the same entity. In short, the legal effect of the change was merely the acceptance of a new charter by the corporation. It remained to every intent and purpose as it did before, though its name was altered, and its new charter was granted by the National instead of the State Legislature. (*First So. M. E. Church* v. *Brownell*, 5 Hun, 464, 468, and cases cited ; U. S. Rev. Stat., § 5154.) I am of opinion, therefore, that the plaintiff is the creditor, and entitled to enforce the contract on which the action was brought, if it is enforceable at all.

The bank made advances to Woodruff, on the faith of the guaranty, from February, 1861, to July, 1876, and there remains due from him to the bank more than $5,000. The partnership of Phelps & Kingman was dissolved in 1863. But it does not appear that notice of such dissolution was given to the bank prior to March, 1875. It was admitted by the plaintiff that in October, 1875, Kingman gave a notice which released him from liability for (as I infer) advances made thereafter. The legal effect of the dissolution of the partnership, with notice thereof to the bank, I think, was to absolve both guarantors from liability for advances made after the notice was given, unless something occurred to qualify or destroy the effect of such notice. The general rule is certainly well settled, namely, that as to third persons the effect of a dissolution of a partnership is to absolve the partners from all liability for future transactions. It has also been repeatedly held, in accordance with that principle, that a guaranty given *to* a partnership cannot be extended to new advances or credits, after a change of any of the original partners, by death or otherwise. (Coll. Part., § 421.) By parity of reasoning, a guaranty given *by* a partnership ought not to be extended to new advances or credits, made after the dissolution of such partnership by death or otherwise, and notice thereof to the person who holds the guaranty. And such is the rule in a case like this, as the same is stated by Mr. Justice STORY. (Story's Part., § 251.) It is also said by Mr. Starkie that it has been decided that a continuing guaranty is countermandable by parol. (2 Stark. Ev. [2d ed.], 371, n.) And an executor, it seems, is not liable for advances made after the testator's death, which operates as a revocation, especially if the person making the advances had received notice of the death before making the advances. (Smith's Merc. Law [3d ed.], 584; *Harriss* v. *Fawcett*, L. R., 8 Chy. App., 866, which disapproves *Bradbury* v. *Morgan*, 1 H. & C., 249.) Whether the assent of both Phelps and Kingman to the continuance of the guaranty, after the dissolution, would preserve their joint liability, and extend the same to advances made after the dissolution, and after notice thereof, is a question which it is unnecessary to decide, for such an assent is not claimed. The plaintiff claims to recover solely upon a several liability of the defend-

ant Phelps. I see no objection to a recovery against him, if a several liability against him has been established. (Code of Civ. Proc., §§ 456, 539, 540.) But I am of opinion that the letter of October 6, 1875, on which the plaintiff relies, cannot be reasonably interpreted as an assumption by Mr. Phelps of any new or separate liability. In that letter it is true he affirmed the validity of the guaranty when given, and at the date of the letter, but he declined to renew the guaranty on the ground that the bank would not be prejudiced by his refusal, because Woodruff would retire the paper *for which the guaranty was given,* and he concluded by asking the bank to let the matter remain. This was very far from an expression of willingness to change, in any respect, the position he occupied when the letter was written, or to incur fresh liability for further advances.

In disposing of the case at Circuit, the court did not advert to that letter, but submitted the case to the jury solely upon the question, whether Phelps notified the bank that he would not continue to be liable upon the guaranty for advances made after October, 1875. That was clearly erroneous, for his liability for future advances ceased when the bank received notice of the dissolution of the partnership, and it did not depend upon the giving or the omission to give such notice. No other notice than that of the dissolution was necessary.

There may be a liability on the part of one, or both defendants, for advances made prior to the notice of dissolution. I am inclined to think that the bank will be entitled to recover such of the advances as were made within six years before the commencement of the action, notwithstanding the notes given therefor may have been renewed, if such renewals occurred before the guaranty expired, unless some other defense thereto shall be established. For it would make no difference whether the bank required payment to be made, and then made a fresh advance, or omitted the demand for payment and granted a renewal. A discontinuance of the action against Kingman, without an actual release of his liability, would not discharge Phelps. (*Irvine* v. *Millbank,* 56 N. Y., 635.)

The judgment must be reversed and a new trial granted, with costs to abide the event.

Present — GILBERT and DYKMAN, JJ.; BARNARD, P. J not sitting.

Exception sustained, and judgment reversed, and new trial granted, costs to abide event.