THE MERCHANTS' NATIONAL BANK OF WHITEHALL, RESPONDENT, v. SARAH ELIZABETH HALL, APPELLANT, IMPLEADED WITH THE CROWN POINT IRON COMPANY.

### Guaranty — when continuing.

The defendant Sarah E. Hall assigned a certificate of stock to the plaintiff's cashier, " as security for the payment of any demands the Merchants' National Bank may, from time to time, have or hold against Edwin W. Hall."

*Held*, that the assignment was intended as a continuing security for all demands then existing against the said Hall, and for all renewals thereof, as well as for all that might thereafter be created in the ordinary conduct of his business with the bank, in the manner in which banking business was usually done.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court, without a jury.

The action was to foreclose a lien claimed by the plaintiff upon 900 shares of the stock of the Crown Point Iron Company, pledged by the defendant Sarah Elizabeth Hall as security for Edwin W. Hall.

The certificate of stock held by the pledgor was, on the 1st of December, 1876, assigned by her to the cashier of the plaintiff.

It appeared that Edwin W. Hall, the husband of the defendant, was at that time largely engaged in mercantile and manufacturing business, a member of several firms, and in the habit of having negotiable paper, of which he was indorser or maker, discounted by the plaintiff in large amounts. There was a large amount of this paper in the bank at the time of the assignment of the stock by the defendant. New paper was subsequently discounted from time to time. The old paper was replaced in some instances by renewal notes, and sometimes paper with other parties was taken in payment of the old paper, which was charged, and the new paper credited. The total aggregate due upon demands held by the bank against Edwin W. Hall was, on the 6th May, 1878 (the time of the trial), the sum of $90,178.08.

The judge found that, whenever a renewal note was accepted in place of an old one, the plaintiff intended to extend the time of payment of the debt until the new one became due, and also,

that each of the several renewals was made without the knowledge or consent of the defendant.

*Esek Cowen*, for the appellant.

*Samuel Hand*, for the respondent.

BOARDMAN, J.:

The decision of this appeal depends upon the construction to be given to the following assignment:

"WHITEHALL, *Dec.* 1, 1876.

"I hereby assign to I. M. Guy, Esq., cashier of the Merchants' National Bank of Whitehall, the annexed certificate No. 103, nine hundred shares Crown Point Iron Company stock, as security for. the payment of any demands Merchants' National Bank may, from time to time, have or hold against Edwin W. Hall.

"SARAH ELIZABETH HALL."

"No. 103.

"900 shares Crown Point Iron Company stock. "$100 per share.

"NEW YORK, *March* 18, 1874.

"This is to certify that Sarah Elizabeth Hall is entitled to nine hundred shares in the capital stock of the Crown Point Iron Company, transferrable in person or by attorney, on the books of said company, at its office, in the city of New York, on surrender of this certificate.

(Signed)  "THOS. DICKSON, *Treas.*
"JOHN HAMMOND, *Pres.*

Such construction will be controlled by the language of the assignment and by the decisions of the courts in analogous cases. The rules for the construction are the same as applied to any other contract. The intent of the parties to it should, if possible, control. If the instrument be ambiguous, it should be construed most strongly against the party giving it. *Crist* v. *Burlingame* (62 Barb., 351), and cases there cited. The circumstances surrounding the transaction and the purpose to be accomplished will always aid in arriving at a correct construction.

Governed by such rules, we may safely say this was a pledge of stock as security for no specific debt or liability, but a continu-

ous pledge, without limit of time or amount. The sole question to be determined is, whether the bank had or held a demand against Edwin W. Hall. Though such demand or debt existed prior to the assignment of the stock, it became a demand immediately thereafter, and was covered by it. The contract provided for debts then existing, as well as such as should be thereafter created. The origin of the demands could not be questioned, only their existence and validity when enforced. Edwin W. Hall was authorized to create demands in favor of the bank and against himself by the instrument. The bank had the right to rely upon the pledge and trust him on the faith of it. So I conclude the instrument was intended to cover and did cover demands of the bank against Edwin W. Hall at the time of its execution as well as demands thereafter created.

It is evident from the course of dealing between the bank and Mr. Hall that it was not expected his indebtedness would be paid when and as it became due. The debt was large. The fact that such a security was given indicates that Mr. Hall was not in a condition to pay what he owed the bank. Mrs. Hall may or may not have known the nature and the extent of her husband's liabilities, but she must be held to have authorized the creation of demands by her husband against himself in the ordinary course of banking business. She wished to help her husband — to give him a credit with the bank, that he might do business. Hence she makes this pledge as security for any *demands* the bank may, from time to time, have or hold against Mr. Hall. This language is very comprehensive. The word " demand " is of very extensive import — much broader than the word " debt." (*In Matter of Denny*, 2 Hill, 223.) She is not personally a surety. She makes no contract to pay in the future any debt of her husband's to the bank. She gives the bank a continuous security. No restriction is placed upon the origin or manner of creation of the demand. When one note is canceled, given up, destroyed, the pledge is no longer liable therefor. When a new note is made and given to the bank, it becomes a demand, and the pledge is liable for it. I do not deem it material whether it be regarded as the giving a new note for the old one, or the discount of the new note and payment of its proceeds upon the old. In either case,

it operates as an extinguishment of the old note, though not, perhaps, as a payment of the debt. The debt is evidenced by the new note, and the new note is evidence of a demand or right of action on the part of the bank against Mr. Hall. (*Hill* v. *Beebe*, 13 N. Y., 562.) The expression "may, from time to time, have or hold" indicates anticipated modifications of the form and amount of debts. However the demand arose, it is provided for by the pledge. Any other construction would not give Mr. Hall the credit he desired. When this pledge was made, he was in debt to the bank a very large amount, which was afterwards increased. If each renewal of his note was to operate as the discharge of the security, the pledge would have been almost worthless to him for bank purposes. The same consequences would follow on giving a note for an overdraft or a protested check or note, or the substitution of business paper for accommodation paper. I do not think any of the parties to the transaction had any such intent. They supposed it to be as on its face. I think it is a continuous security for all demands which the bank might have against Mr. Hall, growing out of the ordinary conduct of his business with the bank, in the manner in which it is usually done.

The appellant's counsel relies very much upon *Smith* v. *Townsend* (25 N. Y., 479). I think the cases are quite distinguishable. In that case, the condition of the collateral obligation was to pay all indebtedness, etc., "whenever the same or any renewals thereof should fall due and become payable." When the indebtedness, amounting to over $90,000, was all due and payable, the bank, instead of renewing it in the usual course of business, made a valid contract with the principal debtor, extending the time for the payment over a period which might last three years before payment in full. The principal debtor was insolvent at the time, and the surety had no knowledge of, and did not consent to, the act. That was held to be a modification of the surety's contract, by which she was released and discharged. The surety restricted her liability to the payment of debts, when due, which were contracted in the ordinary course of a banking business. But the bank made a collateral contract with the insolvent principal greatly extending the payment. The bank could not insist upon

the liability of the surety, because the right of action against the principal was gone, for the time being, by an extension to which the surety was not a party. In the case before us, the liability of the principal and security arise out of the same demand, and is equally enforceable against both. Nor has any contract been made at variance with the terms of the assignment.

Other cases are cited by appellant's counsel: *Davies* v. *Stainbank* (6 DeGex, McN. & G., 679); *Samuell* v. *Howarth* (3 Merivale, 272); *Parrott* v. *Colby* (71 N. Y., 597); *Paine, Rec'r*, v. *Jones* (19 Alb. L. J., 279); *Calvo* v. *Davies* (8 Hun, 222); aff'd., Ct. App., April, 1878; *Grant* v. *Smith* (46 N. Y., 93), and others, but they do not affect this case, if I have given a true construction of the contract of the defendant in making this pledge. If this construction is wrong, if the defendant was a surety to be released upon the renewal of any note because it was an extension of payment without her consent, if the pledge was a security only for specific debts only so long as they remained unpaid, unrenewed and unextended, then no authority will be required to show that the defendant and her pledge have been released by the renewals and extensions made by the bank. In that case, the new notes do not become evidence of a pre-existing demand, as well as an evidence of debt.

The conclusion is, that the pledge was a security for the notes in suit ; that Mr. Hall was authorized to deal with the bank in the ordinary course of business, in giving, paying and renewing his paper ; that the contract of pledge was equivalent in its effect to an authority to Mr. Hall to bind Mrs. Hall to the extent of the value of the property pledged, and to be paid therefrom for any debt or demand which he might at any time owe the bank, howsoever such debt or demand might have been created or perpetuated.

Such conclusion results in an affirmance of the judgment, with costs.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed, with costs.