THE MERCHANTS' NATIONAL BANK OF WHITEHALL, Respondent, v. SARAH ELIZABETH HALL, Impleaded, etc., Appellant.

Defendant, S. E. H., assigned to plaintiff a certificate of stock in a manufacturing corporation "as security for the payment of any demands" plaintiff "may from time to time have or hold against" E. W. H. S. E. H. was the wife of E. W. H., who, at the time the assignment was executed, was largely indebted to the plaintiff and was on the verge of actual insolvency. In an action to foreclose plaintiff's lien upon the stock pledged, *held*, that the assignment, by its terms, included and secured all demands had and held by plaintiff against E., after its execution, as well as those existing at that time; and that the circumstances disclosed this to have been the intent of the parties; also that the assignment was a continuing security; and that an extension of time, by renewals in the ordinary course of business, granted by plaintiff to E. W. H. for payment of any of the debts, did not discharge the lien upon the stock.

The courts will take judicial notice of the general course of business in a community, including the universal practice of banks.

*It seems* that S. E. H. could at any time, by giving notice, have restricted the security to demands actually held by plaintiff at the time of notice, and thus have terminated her responsibility.

(Argued December 1, 1880; decided January 18, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order

made May 22, 1879, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 18 Hun, 176.)

This action was brought to foreclose a lien claimed by plaintiff upon nine hundred shares of the stock of the Crown Point Iron Company pledged to it under and by virtue of the following assignment:

"WHITEHALL, *December* 1, 1876.

"I hereby assign to I. M. Guy, Esq., Cashier of the Merchants' National Bank of Whitehall, the annexed certificate No. 103, nine hundred shares Crown Point Iron Company Stock, as security for the payment of any demands the Merchants' National Bank may from time to time have or hold against Edwin W. Hall.

"SARAH ELIZABETH HALL."

At the time of the assignment plaintiff held a large amount of paper made or indorsed by said Edwin W. Hall, who was the husband of the assignor. New paper, with his name thereon, was subsequently discounted from time to time; the old paper was, in some instances, replaced by renewal notes. The court found, that when a renewal note was thus accepted, plaintiff intended to extend the time of payment of the debt until the new note became due, and that the renewals were without the knowledge or consent of Mrs. Hall. The court found, as a conclusion of law, that the pledge was a security for all of the indebtedness of Hall to plaintiff existing at the time of trial.

Further facts appear in the opinion.

*Esek Cowen* for appellant. The judge at the trial erred in holding that this collateral security was applicable to demands that were in existence at the time such security was assigned for the benefit of the bank. (*Dobbin* v. *Bradley*, 17 Wend. 422; *Glyn* v. *Hertel*, 4 Com. L. R. 112; *Wright* v. *Johnson*, 8 Wend. 512; *Morrill* v. *Cowan*, 20 Moak's Eng. Rep., ; *Hyatt* v. *Grover & Baker S. M. Co.*, 41 Mich. 225; *Crowder* v. *Dick*, 24 Miss. 39.) The court erred in holding that the

extensions of time given E. W. Hall by the several renewal notes, without the consent of the defendant, did not discharge her liability upon the debts so extended. (*Gahn* v. *Niemcewicz*, 11 Wend. 312; *Chester* v. *Kingston Bk.*, 16 N. Y. 336; *Smith* v. *Townsend*, 25 id. 479; *Billington* v. *Wagoner*, 33 id. 31; *Samuel* v. *Howarth*, 3 Merivale, 272; *Davies* v. *Stainbank*, 6 De Gex, McN. & G. 679; *Howell* v. *Jones*, 4 Tyrwhitt, 548; 1 Crompton, Messon & Roscoe, 97; *Smith* v. *Townsend*, 25 N. Y. 479; *Hill* v. *Beebe*, 13 id. 556, 563; *Dorlin* v. *Christie*, 39 Barb. 610; *Fellows* v. *Prentiss*, 3 Denio, 512; *Pratt* v. *Coman*, 37 N. Y. 440; *Lowman* v. *Yates*, id. 601; *Myers* v. *Wells*, 5 Hill, 463; *Place* v. *McIlvain*, 38 N. Y. 96; *Tobey* v. *Barber*, 5 Johns. 68; *Putnam* v. *Lewis*, 8 id. 389; *Van Epps* v. *Dillaye*, 6 Barb. 244; *Hubbard* v. *Gurney*, 64 N. Y. 457, 466; *Albany City Ins. Co.* v. *Devendorf*, 43 Barb. 478; *Pomeroy* v. *Tanner*, 70 N. Y. 551; *Calvo* v. *Davies*, 8 Hun, 222; *Grant* v. *Strong*, 46 N. Y. 93.) The giving of a note for a debt, or a new note in place of an old one, is not payment of the old debt or security unless there is an express agreement to that effect, and it is doubtful if even an express agreement is sufficient. (*Cole* v. *Sackett*, 1 Hill, 516; *Hill* v. *Beebe*, 13 N. Y. 556; *Bates* v. *Rosekrans*, 37 id. 409; *Highland Bk.* v. *Dubois*, 5 Denio, 558; *Burdick* v. *Green*, 15 Johns. 247; *Van Epps* v. *Dillaye*, 6 Barb. 244; *First Nat. Bk. of Chittenango* v. *Morgan*, 6 How. 346; *Parrott* v. *Colby*, 71 N. Y. 597; affirmed, 6 Hun, 55; *Jagger Iron Co.* v. *Walker*, 76 N. Y. 521; *Hill* v. *Beebe*, 13 id. 556; *Babcock* v. *Morse*, 19 Barb. 140; *Brinckerhoff* v. *Lansing*, 4 Johns. Ch. 65; *Bank of Utica* v. *Finch*, 3 Barb. Ch. 193; *Durham* v. *Dey*, 15 Johns. 554; *Parrott* v. *Colby*, 71 N. Y. 597; *Vail* v. *Foster*, 4 id. 312; *Noel* v. *Murray*, 13 id. 167; *Tobey* v. *Barber*, 5 Johns. 68.)

*Samuel Hand* for respondent. The words of a guaranty are to be taken as strongly against the guarantor as the sense will admit. (Fell on Guaranty, 141 [130]; 62 Barb. 351; 7 Pet. 122; 12 East, 227; 3 Wheat. 148.) A pledge of personal

property is an executed contract, and requires no consideration, any more than a gift. (*Richardson* v. *Mead*, 27 Barb. 180; *Arthur* v. *Brooks*, 14 id. 535; *Towsley* v. *McDonald*, 32 id. 604; *Stone* v. *Frost*, 61 N. Y. 613; *Wilson* v. *Little*, 2 Comst. 443; *Hasbrouck* v. *Vanderwort*, 4 Sandf. 74; *Lewis* v. *Graham*, 4 Abb. 106; *McLean* v. *Walker*, 10 Johns. 471; *Wheeler* v. *Newbould*, 16 N. Y. 392.) The word "demands," as used in the assignment, refers to each and every separate obligation upon which E. W. Hall is liable, and not to the indebtedness in mass of Hall to the bank. (*Altham's Case*, 8 Rep. 299; Coke's Notes, 305; Bacon's Abr., "Release," 1; Co. Litt. 291 *b; Merle* v. *Wells*, 2 Campb. 413; *White's Bank* v. *Myles*, 73 N. Y. 335; 3 Kern. 239.)

Folger, Ch. J. The difficulty presented by this case is, to determine just what the plaintiff and defendant agreed to when she made and it received the assignment of the stock.

The first question is, did they mean that it should be a security for debts of Hall that had arisen before the making of the pledge? It is true, as claimed by the defendant, that the instrument is prospective, and that such an agreement as this does not refer to past transactions in the absence of language to that effect. The application that the defendant seeks to make of this rule is, that the guaranty applies to no debt that arose before the agreement was made. The agreement does not in terms name or describe debts made before the pledge. It does not in terms name or describe acts that were done or could have been done, only before the pledge. It does speak of acts which, though begun before the agreement, could be continued and thus be acts done after its making. When it provides for demands that the plaintiff may from time to time have and hold against Hall, it speaks of the act of having and holding a demand; and that is an act that could be done after the making of the agreement, though the demand arose before, and though as an act of having and holding it, it was begun before. If Hall had, before the date of the agreement, made

his note to a stranger, and after that date the plaintiff had become the assignee of the note, the plaintiff would have had and held it after the making of the pledge. The demand thereon would have fallen within the language of the agreement; whether within the intention of the parties to the agreement is another question. It would have been a demand had and held by the plaintiff from time to time (that is, at any or some time during the running of the agreement), against Hall, and so would have been literally one of the demands spoken of by the instrument. It is plain then that the date of origin of the demand is not the test whether the pledge applies to it. The act of having and holding is. Now that act (the act of having and holding after the pledge was made) might be done as well of a debt that arose before the pledge was made as of a debt that arose afterward; and notwithstanding there was also a having and a holding of the debt before. We see no reason in the language of the assignment for taking from the effect of it demands that arose before it was made, if the plaintiff had and held them after it was made. The defendant concedes that the phrase, " any demands the Merchants' National Bank may have," does apply to debts existing at the time of making the pledge. She insists that the phrase " from time to time " necessarily refers to future debts, and thus limits the effect of the phrase " may have." So it might, if that was the only proper and necessary reference of that phrase. It refers no more to debts than it does to the act of having and holding them. So it is not the debt only that may be in the future of the agreement, but also the act of having and holding; and that act may be of that future time, though it be a holding of a debt created before the agreement.

It is said by the defendant that there is no presumption that she undertook, without any consideration, to pay Hall's past debts when the fair construction of the language applies it more properly to future loans. This assumes the matter in debate, viz.: whether the fair interpretation of the language does apply it more properly to future loans. We have endeavored to show that it does not. So far as the existence of any consider-

ation for the agreement is to be gathered from the terms of it, it is one as much for the continued holding of past-made debts as for debts to be made afterward. There is no promise in the paper of loans, advances or credits. Nor does the paper name a condition of that kind. To be sure, the ordinary guaranty for future advances is more commonly to be met with than one for past-debts. Yet a pledge of lands by mortgage, or of personal property by assignment, as a security for the indebtedness of. another already incurred, is not a strange thing. The terms of this agreement and the course of affairs among men do not forbid a presumption of the latter being the purpose of the parties any more than they do the other. It is urged that if the hypothecation applied to past debts, the bank, the next day after it was made, could have sold the stock to pay Hall's debts. This position would be more formidable if, with the interpretation of the defendant, the agreement did not show her exposed to the same disaster. Grant that the paper applies to future debts alone. It does not provide for their amount, or kind, or time of credit. Hall might, the day after the assignment was made, have drawn his sight draft or his bank check in favor of the plaintiff to any amount and have thus put it in the power of the plaintiff to sell the stock at once and swamp it.

We think that the language of the agreement is to be interpreted as applying the pledge to demands against Hall, held and owned by the bank after the making of it, though the debts arose before. To what extent courts will go in applying language to past transactions may be seen in *Nares* v. *Rowles* (14 East, 510).

The second question is, did the gift of time by the plaintiff to Hall, for payment of any of the debts, discharge the stock from liability? The agreement by which the stock is hypothecated makes it a continuing security. The words "any" and "may have or hold from time to time," clearly have that effect. (*Douglass* v. *Reynolds*, 7 Peters, 113; *Agawam Bank* v. *Strever*, 18 N. Y. 502.) The effect of a continuing security is that it applies to any future transaction between the parties

that is within the limits of the agreement. The instrument before us is as wide in limit as it could well be. It does indeed specify the party for whose benefit it is made, and the person, Hall, whose dealings with that party are guaranteed. It also engages for the payment, rather than the collection, of the demands against Hall; though that is hardly a narrowing of the liability of the stock. By specifying the plaintiff, a National bank, as the party for whose benefit it is made, an implication arises that the dealings of Hall and the bank are such as are usual in the business of a bank of loan and discount with a borrower from it. This might sometimes operate to limit the liability of the guarantor. Otherwise than by these there are no limits expressed in the assignment by which the operation and effect of it are held in. It specifies no kind of demand, no amount, no length of time of any indebtedness, no length of time for which the stock might be liable. In the last particular it was susceptible of a limit being put upon it, at any time after it was made, at the will of the defendant. She might, by giving notice, have restricted it to the demands actually held by the bank at the time of notice. (*Mason* v. *Pritchard,* 2 Camp. 436; 18 N. Y. *supra.*) As it reads, it is unlimited in period. As it particularizes no demand, it applies to "debts successively renewed." (*Merle* v. *Wells,* 2 Camp. 413.) We do not suppose that these words of Lord ELLENBOROUGH in that case meant the same as the technical renewals of a matured note by a bank. Those of Judge STORY in *Douglass* v. *Reynolds* (*supra,* at page 125), come nearer, if not quite to it: "This being a continuing guarantee, in which the parties contemplated a series of transactions, the defendants must necessarily have understood that there would be successive advances, acceptances and indorsements, which would be renewed and discharged from time to time." It is not to be denied that a guarantor may be held for all that is done by or for his principal that was contemplated by the contract. (*N. H. Sav. Bk.* v. *Gill,* 16 N. H. 578.) Nor is it to be denied that it is contemplated by a continuing contract of guaranty that the creditor and the principal will

carry on the business provided for in the manner in which it has theretofore, to the knowledge of the guarantor, been transacted. (Id.; *Reddish* v. *Watson*, 6 Ham. [Ohio] 510.) Further than that, the contract of continuing guaranty contemplates that the unparticularized transactions of the creditor and the principal will be carried on in the usual course of the business provided for. (*N. H. Co. Bk.* v. *Mitchell*, 15 Conn. 206; *Combe* v. *Woolf*, 8 Bing. 156, seems to recognize such principle; and so does *Howell* v. *Jones*, 1 Cr. Mees. & Rosc. 97. See, also, *Fox* v. *Parker*, 44 Barb. 541.) The creditor here is a National bank and the dealings anticipated were in a banking business. The general course of business in a community, including the universal practice of banks, is a matter of which the courts may take judicial notice. (18 N. Y. *supra*, 512.) It is a practice of banks, either with favored customers or with debtors who are not able to pay at maturity, to renew the obligations on payment of a new discount. If the customer is in good credit, it is just as profitable, and quite as convenient, to take a new note, without payment in money of the old one, and to receive from him the price of another discount. If the debtor is not in good credit, it is expedient sometimes to keep his debt along by renewals, taking from him the discount at each extension. These are gifts of time. It was in this way that the plaintiff gave time to Hall. We have a right to assume that Hall was of one of these classes; that the bank and he sought to provide for such a course of business; that the hypothecation was got to make it safe for the bank and to give credit to Hall; and that it contemplated such a series of transactions. The defendant put into the possession and power of use of the bank and Hall her stock and the assignment, without any express restriction thereon. The legal presumption in such case is that the parties intrusted with it were authorized to use it in any legitimate way in which it could be made subservient to their purposes. (18 N. Y. *supra*, 513.) She was not perpetually bound by the pledge she had made as a continuing guaranty, and could have terminated her responsibility at any time by notice. (Id.) Whenever she should have done

that, the liability of her stock would have been that of a specific guarantor for the payment of the very demands then existing, and she would then have had a right that they be not changed or extended so as to interfere with her right to perform and be subrogated. It was not so with her subsisting guarantee, made in contemplation of the course of dealing that was had under it, and to which she is to be taken to have been a pre-assenting party.

So far we have gone upon the reading only of the instrument of pledge and the presumptions arising from what is found in it. When we look into the facts as they existed when the parties made their agreement, and construe the paper by the application to it of them, our interpretation is sustained. The defendant was a married woman, the wife of the debtor Hall. He had some connection with the plaintiff closer than that of a borrower merely. The plaintiff was a bank of loan and discount. It was located in an interior village. Presumably its capital was small — not over $200,000. Hall was liable to it in one form and another in over $72,000, or over one-third its presumed capital. His credit was gone. His means were not enough to set it up again. He, and others for whom he was liable, or who were liable for him to the plaintiff, were on the verge of actual insolvency and legal bankruptcy. The plaintiff was then holding debt against him, for which it afterward took, as collateral security, a pledge of shares of its own capital stock. Such was its own financial state that that stock on sale realized but forty cents on the dollar. It is plain that the condition of the bank was such that the main thought of the managers of it must have been, how to save it from ruinous loss by Hall. The situation was such as is often known to the practical or judicial observer, and so is the remedy that is usually sought for and applied. The safety of the large accrued indebtedness depended upon the continuance of the debtor in business, in hope of his future success. There was no thought of payment immediately or soon. The practicable methods were to give time on his debts; to give him continued and regularly recurring support, favor and lenity. This was

so doubtful in prospect as to require some consideration to move the creditor thereto. So much of the ready means of the creditor was already in the indebtedness, as that funds were not in hand for an actual loan of money on new obligations, and an actual payment of old debts with that loan, though sufficient security had been offered. When, in such case, the debtor is found furnishing collateral security in pledges of property by relatives or friends, or guaranties of personal liability, the inference is not strained, it is ready, that the attempt is to be made to tide the debtor over his embarrassments, to keep his head above water until times shall change, business revive, properties enhance, depreciated assets improve in value and be converted. It is idle to suppose that in such circumstances the plaintiff and Hall were about to start a new-formed business relation, and that the method, unusual in such cases, of the pledge of the capital stock of a manufacturing corporation, was taken for the safety of a prospective business. The inference is, that the pledge of this stock was sought and obtained as a partial or complete reliance, while the bank, by renewals and extensions, should carry along the indebtedness of Hall. It is plain, then, that it was meant by Hall and the bank as a security for his indebtedness then existing, and that thereafter to arise, in whatever form the demands might take, and after whatever renewals, extensions and changes. Compare this state of facts with the terms of the paper, and they join to support such a presumption. It may be, that the defendant had not precise knowledge of the facts as they then existed; yet it is to be inferred that she had a general understanding of the state of affairs, and that she executed the assignment in view of them. The answer avers that the instrument was got from her by unreal pretenses. The testimony discloses nothing of it. No findings are asked to that end. And it is to be presumed that the assignment was obtained from her fairly, and in view of the condition of affairs then existing. She is bound, therefore, by such a construction of her agreement as arises fairly from the circumstances in which it was used by her authority.

It is well to say that we have given consideration to the authorities cited for the defendant. The cases cited on the first question we have considered go upon the language used in the contracts there, and upon the reasons drawn from the state of facts peculiar to them. The cases cited on the second question are based upon a principle not denied, that a gift of time to a principal debtor discharges the surety; but it will be found that in them "new arrangements, not contemplated at the time of entering into the guaranties by any of the parties, are introduced; and thus the state of circumstances altered without the contemplation and without the consent of one of the parties." In these cases of guaranties, the decision. in one does not aid greatly in the disposition of another, save as some principle is evolved applicable to all alike. (See per STORY, J., 7 Peters, *supra;* per PARK, J., *Hargreave* v. *Smee,* 6 Bing. 244; *White's Bank* v. *Myles,* 73 N. Y. 335.) We have not gone counter to any principles laid down for the reading of unperspicuous contracts, and those are the principles that apply to these contracts of guaranty as well as to others. (*Belloni* v. *Freeborn,* 63 N. Y. 383.) We have felt the importance of the case. We state, as the conclusion of our judgments, that the courts below made no error.

The judgment appealed from should be affirmed.

All concur, except DANFORTH, J., not voting.

Judgment affirmed.