DELAWARE, LACKAWANNA AND WESTERN RAIL-
ROAD COMPANY, PLAINTIFF, v. JOHN M. BURKHARD,
GEORGE FRITCHIE AND KATHARINE FRITCHIE,
DEFENDANTS.

*Guaranty — when the surety is discharged by an extension of the time of payment.*

This action was brought upon a written agreement, dated June 9, 1881, by which
the defendants agreed with the plaintiff that one Florack, " who has purchased
or is about to purchase anthracite coal of said company, shall and will pay
said company, at such time or times, and at such prices as may be agreed upon
between the said company and the said Frank J. Florack, for all coal that may
be shipped to him up to the 1st day of May, A. D. 1882, and in default of his
so doing, we agree to pay for the same, whether the indebtedness be in open
account or embraced in notes, drafts or bills of exchange."

In pursuance of this agreement, coal was shipped to Florack until, but not after,
November 5, 1881, payment on account thereof being made by him, from time
to time, after the shipment of coal had been so discontinued.   The company
took from Florack notes for the amount due, which matured in January and
February, 1882.   When these notes fell due, payments were made thereon,
and new notes, falling due prior to May first, were taken for the balance.

*Held*, that the extension of the time of payment given to Florack, by renewing
his notes, discharged the defendants from all liability on their agreement.

That the defendants' liability was not altered by reason of the fact that, under
the arrangement for the sales and purchases, Florack was to settle monthly,
but that, if he was unable to then pay, the plaintiff would accept his notes,
due in from one to three months, and would be as lenient as it could be, if he
was unable to pay them when they became due.

MOTION by the plaintiff for a new trial on exceptions taken at the
Monroe Circuit, and ordered to be heard at General Term in the
first instance.

The action was brought on an instrument made by the defendants,
as follows: " For a valuable consideration to us in hand paid by the
Delaware, Lackawanna and Western Railroad Company, at and
before the execution hereof, the receipt of which is hereby acknowl-
edged, we do hereby agree to and with the said company that Frank
J. Florack, of the city of Rochester, State of New York, who has
purchased, or is about to purchase, anthracite coal of said company,
shall and will pay said company, at such time or times, and at such
prices as may be agreed upon between the said company and the
said Frank J. Florack for all coal that may be shipped to him up to

the 1st day of May, A. D. 1882. And in default of his so doing,. we agree to pay for the same, whether the indebtedness be in open account or embraced in notes, drafts or bills of exchange.

" Witness our hands and seals this 9th day of June, 1881.

" JOHN M. BURKARD.        [L. s.]

" GEORGE FRITCHIE.        [L. s.]

" KATHARINE FRITCHIE.     [L. s.] "

The plaintiff had shipped some coal to Florack before the agreement in question was made, and afterwards, and until and not after November 5, 1881, continued to ship coal to him, amounting altogether to the sum of $15,142.69, upon which he from time to time made payments. On the 20th day of October, 1881, Florack gave to the plaintiff his note of that date, due at three months, for $2,500, which matured on the 23d January, 1882, when a payment of $838.75 was made, and a new note at three months given for the balance, $1,700. On the 21st November, 1881, Florack gave the plaintiff his note, due at three months, for $2,596.58, which matured 24th February, 1882, when a payment of $1,040.82 was made on it, and a new note given for the balance, $1,596, due at one month. This matured on 27th March, 1882, when $226.37 was paid on it, and a new note made due at one month for the balance, $1,378.45, on which was subsequently paid $415.98, leaving a balance due on this note of $952.47.

This action is brought to recover an amount equal to that remaining due on the two notes which matured April 26 and April 30, 1882. The complaint makes no reference to the notes, but charges the sale and delivery of coal to Florack and default in payment of such balance, and at the trial the plaintiff offered to surrender up the notes. The plaintiff was nonsuited as to Katharine Fritchie, because it appeared that she was a married woman when she executed this agreement, and a verdict was directed for the other defendants.

*W. P. Goodelle*, for plaintiff.

*Sullivan & Morris*, for defendant Burkard.

*Satterlee & Yeoman*, for defendants Fritchie.

BRADLEY, J. :

The married woman defendant was not bound by the agreement. The only question presented in this case is whether the extension of time of payment given to Florack, and produced by the renewal of his notes, operated to discharge the male defendants from liability on their agreement of guaranty. Their relation was that of sureties and their liability rested wholly in the agreement to answer for the default of their principal, who it may be assumed had credit on the faith of the obligation of the defendants. The intention of the parties must be derived from the language used in the written undertaking. And in its interpretation the words employed will be deemed used in their popular sense. And their meaning, application and purpose, with a view to ascertaining the intention of the parties, may be aided, if necessary, by extrinsic, surrounding and attending circumstances, but the language of the instrument thus interpreted must govern. (*Crist* v. *Burlingame*, 62 Barb., 351; *Merchants' Nat. Bank* v. *Hall*, 83 N. Y., 338; *White's Bank* v. *Myles*, 73 id., 339.) And as against the defendants as such sureties, the terms of the undertaking will not be extended by implication in support of their liability. Their contract is *strictissimi juris*, and the rights of the parties to it must depend upon the terms which the guarantor has prescribed by it. (*Ludlow* v. *Simond*, 2 Caines' Cas., 57; *Barns* v. *Barrow*, 61 N. Y., 39; *Ward* v. *Stahl*, 81 id., 406; *Holl* v. *Hadley*, 5 Bing., 54.)

But in the matter of interpretation of the terms of a guaranty to ascertain what is in fact expressed by it, the guarantor has no advantage over parties to other contracts in which the question of liability of sureties is not involved, and the same rules of construction to that extent will be applied with a view to give it effect according to the fair import of its terms. (*Gates* v. *McKee*, 13 N. Y., 232; *Crist* v. *Burlingame, supra*; *Douglass* v. *Reynolds*, 7 Peter, 113; *Evansville Nat. Bank* v. *Kaufman*, 93 N. Y., 273.)

The agreement in question is a special guaranty, and creates an obligation to answer for default of the principal in payment for coal sold to him by the plaintiff. And it is a continuing one, and relates without restriction to all sales of coal so made to him during the period of time prescribed. (*Pratt* v. *Matthews*, 24 Hun, 387.) The parties contemplated that the sales should be on credit, and

on such credit as should be agreed upon by the plaintiff and the purchaser. Thus far, no question can arise on construction. The evidence tends to prove that the system was to settle the twentieth day of every month, and then pay. And such was the arrangement under which the sales and purchases were made and the coal delivered, but that if he was unable to pay, then the plaintiff would accept Florack's note, due from one to three months, and would be as lenient as it could be if he was unable to meet the indebtedness when it became due. That was the agreement which the defendants undertook Florack should perform with the plaintiff. And it was not important whether his liability was in open account, or in notes, drafts, or bills of exchange. And it may be assumed that the defendants' liability would have arisen on default in payment of the two notes of dates October 20 and November 21, 1881. The question arises, and such is that of this controversy, whether their liability was defeated and their obligation released by the taking of the subsequent notes in renewal of those first taken for the debt? The plaintiff's counsel contends that the liability of the defendants was not thus limited, but that they undertook to pay on default of their principal without reference to the term of credit, and the renewal of the notes was but an extension of the term of credit within the contemplation of the parties to the agreement of guaranty. It will be observed that the contract is that Florack shall pay *for the coal* at such time or times as may be agreed upon between the plaintiff and him, and to pay on his default to do so. That is the undertaking and the only one the defendants have assumed. If any other or different contract than that is required to support this action, the plaintiff cannot recover.

The time fixed, by the agreement under which the coal was purchased, to pay for it, expired when those notes first given became due. And the giving of the subsequent notes was the subject of a new agreement, and while it in effect was the giving of further credit for coal, it was also an arrangement for renewal of the matured notes. It involved more than a sale on credit, or an agreement for credit, pursuant to which a sale was made and went beyond it. It embraced an additional and new element in the arrangement for credit to be accomplished by the renewal of the notes for two and three months. This was done after the credit

within and contemplated by the contract of sale had expired. (*Smith* v. *Townsend*, 25 N. Y., 479.) But the learned counsel for the plaintiff suggests and contends that the defendants' undertaking to pay was absolute on default of their principal; that no definite time of payment was to be agreed upon; that in view of the understood course of dealing between it and Florack, it could not be contemplated that each shipment of coal should create a distinct indebtedness, payable at any definite time, or that the amount of it would become fixed and determined until the expiration of the period covered by the guaranty, and, therefore, the extension of the time of payment by the renewal notes was fairly within the contract, because they became due before the expiration of the time over which the guaranty extended. None of those propositions, except the concluding one, require any consideration.

The plaintiff and Florack were not, nor was either of them, required to continue the deal during the whole time embraced within the terms of the guaranty. They were at liberty to, and did, terminate the sale and purchase of coal between them with the 5th day of November, 1881, the cause for which is not important. The deal then closed. The balance due the plaintiff became a fixed amount of indebtedness. The credit was afterwards fixed by an agreement which produced the notes of October and November for the amount. And although the precise term of credit was not agreed upon when the coal was delivered, it became definite when the notes were taken, and that credit as then fixed became that contemplated by the agreement when the coal was delivered, within the meaning of the instrument of guaranty. The suggestion is made that the undertaking that the principal will pay " at such time or times " as may be agreed upon, imports that succeeding terms of credit may be given to pay the same amount or balance, and that it is entitled to such interpretation, because the language does not limit the credit to that *first* given. That construction might have support if there had been but one transaction or purchase in view. The word " times " has relatively the same application as the word " prices " in the instrument, and its reasonable interpretation, in connection with the other provisions, would seem to apply it to the distinct purchases, respectively, rather than to a repetition of credit for the same designated sum or balance of

indebtedness. And this view is not weakened by the provision which makes the agreement applicable to default in payment of notes, etc., inasmuch as the default must be in payment at such time or times as may be *agreed upon for the coal* and the agreement between them for credit, for it embraced the giving and acceptance of notes for balances on the monthly settlements. To say that a promise by a surety to pay in default of his principal, who was to have a credit agreed upon by him with his creditor, would hardly be deemed to include a series of credits, defaults and liabilities. But it is said that the remark on the part of the plaintiff as part of the arrangement, that it would be as lenient as it could be if he could not meet the indebtedness, implies that the credit might be extended by renewal of notes. That is not a very definite term, but relates to the matter of enforcement of payment, and imports indulgence, and the converse of rigor and severity, and not the placing of any obstruction in the way of exercising the power of enforcing collection by a new and binding agreement of extension of credit. It is difficult to see how this could be construed or understood as an arrangement which would include an extension of credit by renewal of paper. The mere matter of leniency would not legally prejudice the rights of the defendants. And in the matter of construction, a strained and unnatural interpretation will not be given when it impairs their rights.

Mere delay in proceeding to collect of Florack would not affect the liability of the defendants to the plaintiff, or their right to pay and take measures for reimbursement and protection as against their principal. But a valid agreement between the plaintiff and him for extension of time of payment would have the effect to deny to the defendants, during such time, any right of payment and subrogation; and hence it is that such extension given by a creditor to his principal debtor, without the consent of his surety, operates to discharge the latter. The taking by the plaintiff the renewal notes suspended until their maturity, all remedy, either by the plaintiff or the defendants, against the maker, on account of the debt secured by those notes. (*Place* v. *McIlvain*, 38 N. Y., 96; *Pomeroy* v. *Tanner*, 70 id., 551.) And it necessarily follows that if those extensions of credit were not within the contemplation of the agreement of guaranty, the liability of the defendants ceased,

and their obligation was discharged when those notes were taken by the plaintiff.

In *Samuell* v. *Howarth* (3 Merivale, 272), the plaintiff guaranteed the payment to the defendant for any goods the latter might supply to one Henry between the 2d of April, 1814, and the 2d of April, 1815. Sales were made on credit of six and nine months, payable at the expiration of the credit in notes at three months, which were given ; and at maturity renewal notes were taken of the principal debtor without the consent of his surety. The latter filed a bill to restrain prosecution at law and for relief against the guaranty, and that it be declared at an end and void. The court sustained the injunction, and held that the complainant was entitled to the relief. And Lord ELDON, in delivering the opinion, held that the renewal of the notes was not within the contract of guaranty ; and that because the right of remedy of the surety was suspended by such extension of time of payment, the latter was discharged from liability, and added : " It has been truly stated that the renewal of these bills might have been for the benefit of the surety; but the law has said that the surety shall be the judge of that, and that he alone has the right to determine whether it is, or is not, for his benefit." That case bears some resemblance to this, if we are right in the construction given to the defendants' guaranty. (And see *Combe* v. *Woolf*, 8 Bing., 156 ; *Howell* v. *Jones*, 1 Cr. Mee. & Ros., 97 ; *Bangs* v. *Strong*, 7 Hill, 250 ; *Bangs* v. *Mosher*, 23 Barb., 478 ; *Fellows* v. *Prentiss*, 3 Denio, 512 ; *Hubbard* v. *Gurney*, 64 N. Y., 457 ; *Greene* v. *Bates*, 74 id., 333.)

And the conclusion follows that by taking the renewal notes the plaintiff relinquished the liability to it of the defendants, assumed by that instrument. In *Merchants' National Bank* v. *Hall* (83 N. Y., 338), the transfer as security was made and taken in view of the method of conducting banking business, and in anticipation of the general course of that business which is so universal that it is a matter of which courts may take judicial notice. The security there was a continuing one, given on account of credit of the debtor upon his paper held by the bank, and that credit was continued by the usual method of banks by renewal of the paper. The court held that such manner of credit was within the contemplation of the parties to the instrument, for the reason before

mentioned, which does not apply to the transaction in question here.

. We see no force in the contention that the liability of the defendants continued during the entire period mentioned, without reference to the extension of credit and the manner which it was given during that time, and that because the renewal notes matured and default in payment of the amount of them was prior to May 1, 1882, it was within the contemplation of the agreement as its terms fairly import. The time mentioned in the guaranty had no such purpose or application. It had relation to defaults in payment for the coal pursuant to the agreement under which it was purchased, and related to any purchases made within that time without reference to the time of default, whether before or after the 1st day of May, 1882. (*Davis* v. *Copeland*, 67 N. Y., 127.) This is the reasonable construction of the undertaking and in harmony with all its provisions. Any other view requires the introduction of implication, which is not justified as against the defendants.

The suggestion that the defendants might have protected themselves against prejudice, by directing the plaintiff to collect of Florack, does not seem to be pertinent to the questions involved. That, however, may not have resulted in any advantage to them. The failure of the plaintiff to proceed would not necessarily have afforded them any remedy. That would have depended upon the solvency of their principal then and his subsequent insolvency, both of which must be established by evidence and neither by presumption. (*Pain* v. *Packard*, 13 Johns., 174.)

The assignment of Florack to defendant Burkhard for the purpose of indemnifying and saving harmless the defendants from loss, damages, costs and expenses in consequence of the obligation in question, made June 7, 1882, does not have the effect to charge them, or either of them, with liability in this action, nor can it be treated as a waiver on the part of Burkhard of any right of defense. The action is upon the agreement and the right of recovery depends wholly upon the obligation created by it. (*Otsego Co. Bank* v. *Warren*, 18 Barb., 290; *Tower* v. *Durell*, 9 Mass., 332.) The plaintiff may, however, have the property so assigned for such purpose appropriated in payment of the claim in an appropriate action

for such relief. (*Keyes* v. *Brush*, 2 Paige, 311; *Clark* v. *Ely*, 2 Sandf. Ch., 166; *Ten Eyck* v. *Holmes*, 3 id.; 428.)

The exceptions to the exclusion of evidence were not well taken. That offered in relation to talk between Florack and the plaintiffs' agents, " in regard to the leniency they should exercise in regard to payment," etc., did not purport to relate to any renewal of notes, or to the making of any valid agreement to extend time of payment, and was immaterial. And there was no question of fact for the jury in respect to the intent of the parties to the guaranty when it was executed. Its construction in that respect under the evidence, was a question for the court. None of the plaintiffs' exceptions are well taken.

The motion for a new trial should be denied, and judgment ordered on the verdict.

BARKER, P. J., and CORLETT, J., concurred; HAIGHT, J., not sitting.

Motion for new trial denied, and judgment ordered for the defendant on the verdict.