Titus, J.
The plaintiff’s assignor, F„ F. Hoyer, is a practicing physician and surgeon of the village of Tonawanda, in this state. The defendant’s testator, who lived at the same place, while in Milwaukee, Wisconsin, sent for the doctor to come and attend his sick wife. He immediately went, and was gone about eight days attending upon Mrs. Briggs. He brings this action to recover for his services, and claims $100 a day for the time actually spent in the employ of Briggs, and was allowed by the referee $777.76, with $44.44, being the amount of his expenses during that time. A number of physicians were called by both the plaintiff and defendant on the value of the doctors’s services, and numerous exceptions were taken on the trial, to the rulings of the referee on the taking of testimony, and on his findings, and refusals to find; I have noticed only such as have a bearing on the case, as it is finally disposed of.
I think the testimony of the physicians who were called on behalf of the plaintiff was properly admitted by the referee, and no error was committed in his rulings thereon. *238 They were called as expert witnesses to prove the value of professional services. It appears that in estimating the value of Dr. Hoyer’s services they, among other things, took into account his character anil reputation as a skilled practitioner, whose time was valuable, especially when called away from his home practice. Such testimony is always received for the purpose of proving the value of labor and services of non-professional persons, as well as of the services of professional men. It is not necessary that such witnesses should have personal knowledge of labor or services performed, but may testify after learning the quality of the services the time employed, and other facts bearing upon their value. Beekman v. Platner, 15 Barb., 550; Jackson v. N. Y. C. R. R. Co., 2 T. & C., 655; McCollum v. Seward, 62 N. Y., 316; Seymour v. Fellows, 77 N. Y., 178.
The witness should be put in possession of the facts claimed to be established by the party calling him, and the usual way is to ask a hypothetical question, assuming the facts as proved, or if the witnesses have been examined in his presence, a question in that form would not be necessary. Harnett v. Garvey, 66 N. Y., 641.
It is claimed by the defendant that the doctor’s charges, are excessive, and that the court should take judicial notice of what is a reasonable and just charge for him to make under the circumstances. I do not think the rule • which he invokes has any application in this case; and the cases cited do not bear out his proposition. The courts hold in substance- upon that question that they will take judicial'notice of the customs and business methods of banking, railroad, and other public corporations, because the public at large are constantly doing business .with them, and are presumed to know, and no evidence of fact is necessary, of which every one has personal knowledge. Merchants’ National Bank of Whitehall v. Hall, 83 N. Y., 338; Slater v. Jewett, 85 id., 61.
But in actions to recover for labor and services no such rule obtains, for the reason, undoubtedly, that such matters are not subjects of common and public concern, and but very few persons in a community are qualified to speak upon the subject, or have sufficient information to give a correct opinion. Men are not presumed to know what does not come under their observation, and in all such cases are required, when called as witnesses, to show special knowledge before their evidence will be received by the court.
The defendant also insists that the referee erred in not giving full weight and effect to the testimony of the defendant’s witnesses on the question of the value óf Dr. Hoyer’s services. I do not think his views are correct, no matter *239 what my own opinion may be as to the reasonableness of his claim, or whether or not his services were worth ao hundred dollars a day; so long as the referee in arriving at° his conclusion has violated no rule of law, and kept within the evidence, this court should not interfere, because he has allowed, possibly, a larger amount for the sfervices than some other judge or referee might have done.
His refusal to accept the defendant’s proof of value was not error. It was his duty to consider the whole evidence, and to determine its credibility and value. The witnesses were all before him, some fixing a higher and some a lower value to the services, and it is properly left to the referee in the exercise of his best judgment to determine which is most likely to be fair and right in stating what such services are worth.
It seems to me, however, that the referee 'was in error in not allowing the counter-claims set up by the defendant in his answer, and proved on the trial, as they were practically undisputed, standing upon the uncontradicted evidence of the defendant’s witnesses.
The defendant gave in evidence a judgment-roll in the county court of Erie county, wherein Thomas E. Webb was plaintiff, and Dr. Hoyer, the plaintiff’s assignor, was defendant, from which it appears that on the eleventh day of July, 1878, a judgment was recovered against Hoyer ill that action for $235.08, damages and costs, and from the return of the sheriff of Erie county to an execution issued to enforce its collection, it appears that the sheriff found no property and returned the execution wholly unsatisfied.
It is established by competent and satisfactory evidence that before the commencement of this action, and on the nineteenth day of November, 1881, the judgment was assigned to the defendant’s testator. There is no evidence in the case to dispute the fact, that at that time it was fully and completely assigned to Driggs, and he became the lawful owner of it, and could set it up as a counter-claim against any demand Hoyer might have against him, unless the declaration of Webb, after the assignment was made, to Gorton and Towne, that “if Driggs would not take that judgment soon he would not let him have it,” may be so considered.
These declarations were shown to have been made on the 18th or 19th day of December, 1882, and the assignment to Driggs was made on the 19th day of November, 1881, or more than a year before, so that these declarations of Webb are of little value, and neither prove nor disprove anything. There is no evidence in the case and no pretense by Dr. Hoyer, who was sworn as a witness, that the judgment has been paid, and no presumption of payment arises. *240 The amount of the judgment should have been allowed as a counterclaim against the plaintiff.
I am of the opinion that the bill for labor and material furnished to the plaintiff, by Howes and Evans, should have been allowed by the referee to the defendant.
In August, 1880, Howes and Evans, who were operating a planing mill at Tonawanda, commenced doing mill work for, and furnishing lumber to, the plaintiff, until June, 1881, at which time their account against him amounted to $140.59. This amount was reduced by payment so that on the 20th day of January, 1883, at which time it was assigned to the defendant’s testator, there was unpaid but $97.20. Unless this sum has been paid, it is available in the hands of the defendant as a counterclaim against any demand which the plaintiff has against him. It is claimed by the plaintiff that at least $78.95 of this amount was paid Howes and Evans by the sale to them of a bill of lumber for that sum.
It is undisputed that the plaintiff, as agent for E. P. Milliner, sold Howes and Evans, a bill of lumber amounting to $78.95, but it also, appears, and this fact is undisputed, that one Christian Fritz, having a judgment against the plaintiff for $941.34, seized and levied upon this lumber, under his judgment, and sold it, so that Howes and Evans did not get the lumber on the sale from E. P. Millener, and as these facts are not controverted, it follows that Howes and Evans got no title to the lumber by that sale, and their bill remains unpaid.
As the amount of these two items is not disputed and can be easily computed it is not necessary to send the case back to the'referee for that purpose.
The judgment against Hoyer is................... $235 08
The interest on that sum, from July 11, 1878, nine
years, is...................................... 126 94
The bill of Howes and Evans is.................. 97 21
The interest thereon, from June 9, 1881, is....... 35 48
Making the whole amount of the defendant’s
counterclaim, which should be allowed......... $494 71
The rulings of the referee on the trial relating to the counterclaims, are rendered immaterial, when this disposition is made of the case.
The judgment of this court should be, that the plaintiff, within thirty days, file with the clerk of this court, a stipulation,. reducing the amount of his judgment, $494.71, and the judgment as modified, be affirmed, without costs. *241 Otherwise the judgment should be reversed, with costs to abide the event of the action, with leave to the defendant to apply at special term for the appointment of another referee.