Brown, J.
Assuming that the plaintiff was struck upon the head by the brick arch within the tunnel, and that he was, as a result of that blow, thrown from the cars and injured, I think there was ample evidence for the jury to determine that the defendant was guilty of neglect producing the accident, and that plaintiff was free from carelessness contributing to it. The jury were warranted in finding that the only notice that the plaintiff had of the existence of the arch was that received from the telltale. This was located about 200 feet west of the west entrance of the tunnel. It served as a warning of the approach to the tunnel, but it gave no notice of the obstruction within the tunnel. A person receiving its warning, and noticing the height of the tunnel, might naturally suppose that the height at the entrance would be maintained throughout its length, and if the height was' at any point reduced, that notice of that fact would be given. Eelying, therefore, upon what would be apparent to his observation, he was exposed to a danger of which he had no notice or information.
The defendant evidently perceived the weakness of this part of of its case and gave evidence of actual notice of the existence of the arch to plaintiff, but upon that question the verdict of the jury *730 is in accord with the plaintiffs testimony. The plaintiff also testified that he was instructed to ride upon the top of the cars at places where it might be necessary to apply the brakes. He was approaching such a point on the road, when the accident happened, and it was a fact for the jury to determine whether, in going upon the top of the car at the time he did, he was guilty of any negligence. Certainly, if he had a right to assume, as we think he had, in the absence of notice as to the existence of the arch, that there was room in the tunnel to maintain a standing position, he would not necessarily be careless in occupying such a position on thenar near his post of duty. The difficult question in the case is to reconcile the plaintiff’s theory of the accident with the •evidence.
It appears that the tunnel at the west entrance was twenty feet high. Two hundred feet from the entrance the brick arch began and continued for a distance of eighty-five feet. It reduced the height of the tunnel to fifteen feet nine inches, measured from the rail.
The plaintiff testified that he left the engine and went on the top cf a box car and sat down. His exact words are: “ I was sitting down on the box car, on the head box car, where 'the brake was. I went .out on the box car and sat down, and that is the last I remember.”
This car was identified and proven by a witness called by plaintiff to have been eleven feet two inches high, from the rail to the foot-board that the men walk on, in the centre of the roof. There was, therefore, a space of four feet and seven inches between the top of the car, where plaintiff was sitting, and the bottom of the arch. There was a cut or gash on plaintiff’s forehead which, it is claimed, he received by coming in contact with the arch, so that his head, to have received a blow at that point, must have been at least four feet eight inches above the foot-board on the top of the car.
The plaintiff’s counsel in his brief has endeavored to show the space between the car and the arch to have been much less, but the measurements appear without contradiction to be those I have stated. The theory of the plaintiff’s case was that he was rendered unconscious by a blow received on his head from coming in contact with the arch and that he was carried by the train to a point about 300 feet east of the east end of the arch, where he fell from the car and was run over and his foot crushed.
That he might have been carried to the point where he was found is not improbable, but that he could have received a blow on the head from the arch while sitting upon the top of the car would appear to be physically impossible.
There was no evidence given on the trial as to the plaintiff’s size or height, and the argument is now made that as the jury saw him and could therefore judge of his size it must be assumed that it was not impossible for his head to have reached as high as the arch, and the learned judge who presided at the trial appears to have submitted this question to the jury saying “ if the plaintiff was sitting down it is for you to say whether his head would reach to that height.”
*731 The verdict of the jury rests upon an affirmative answer to this question, and we are now called upon to say whether we will accept that finding and sustain the judgment or whether we will take judicial notice of the height of the human body and the measurements of its separate parts, and so taking notice of those facts reverse a judgment that is based upon a finding clearly contrary to the laws of nature.
No exception was taken to the charge, but by an exception to the denial of the motion to dismiss the complaint, made at the ■close of the plaintiff’s case and renewed at the close of the testimony, on the ground that the facts proven were insufficient to constitute a cause of action, the question is properly before this court.
Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case.
The rule that permits a court to do so is of practical value in the law of appeal, where the evidence is clearly insufficient to support the judgment. In such case judicial notice may be taken of facts which are a part of the general knowledge of the country .and which are generally known and have been duly authenticated in repositories open to all, and especially so of facts of official, scientific or historical character.
Thus it has been held that courts will take judicial notice of matters of public history, such as the existence of the late civil war and the particular acts which led to it. Swinnerton v. Columbian Ins. Co., 37 N. Y., 174; Woods v. Wilder, 43 id., 164.
Of the general course of business in a community, including the universal practice of the banks. Nat. Bank v. Hall, 83 N. Y., 338; Yerkes v. Nat. Bank, 69 id., 382-387. That books of general record giving descriptions and standing of all ships, known as “American Lloyds,” “The Green Book” and “The Record Book,” are referred to by business men for the purpose of ascertaining the condition, capacity and value of ships. Slocovich v. Orient Ins. Co., 108 N. Y., 56, 63; 12 N. Y. State Rep., 806.
Of the value of “ pounds ” in our money and in rendering judgment convert them into dollars. Johnston v. Hedden, 2 Johns. Cases, 274. Of the expectation of human life. Johnson v. Hudson R. R. R. Co., 6 Duer, 633. Of the course of seasons and husbandry and the general course of agriculture and that a crop at a certain date would not have matured. Ross v. Boswell, 60 Ind., 235; Floyd v. Ricks, 14 Ark., 286. Of the time of the rising and setting of the sun and moon. Case v. Perew, 46 Hun, 57; 10 N. Y. State Rep., 811. And generally of those things which happen according to the ordinary course of nature; the course of time and the movements of the heavenly bodies, the coincidence of the days of the week with the days of the month; ordinary public fasts and festivals and legal weights and measures. 1 Greenleaf Ev., chap. 2, § 5.
And to ascertain such well known facts recourse is had to such documents and references as are worthy of confidence.
Within this rule the court may take notice of the size and height of the human frame, and doing so we know that the plaint *732 iff’s head could not have reached to a height sufficient to come in contact with the arch.
We know that the average height of man is less than six feet. That the average length of the body from the lower end of the-spine to the top of the head is less than thirty-six inches. That this measurement varies but little in adults and that the chief difference in the height of men is in the length of their lower limbs.
To assume, therefore, as we must, in order to sustain the judgment, that the top of the plaintiff’s head when in a sitting position was four feet seven inches above the board on which he was sitting, is to assume him to have been not only far above the average height of man, but of a height beyond that of which we have any authentic record.
It has not been claimed by the respondent that the plaintiff was-a man of extraordinary height, and if he was, I think a fact so-rare in the course of nature should be made apparent in someway on the record.
It can be asserted, I think, without contradiction, that a-man whose forehead would be four feet seven inches above a seat upon which he was sitting would have a frame at least nine feet high. History affords no authenticated instance of men obtaining such height. Buffon, in his Natural History, records instances of men attaining extraordinary heights, but. modern writers do not accept his statements. Pliny tells of an Arabian nine feet high, but the story is not authenticated.
In the article upon “Giants,” in the Encyclopedia Britannica, it is stated that the tallest man whose stature has been authentically recorded was Frederick the Great’s Scottish giant, who was eight feet three inches tall. In the College of Surgeons, in London, there is a skeleton of an Irishman who was named Charles Bierne, which measured eight feet.
Such heights are of rare occurrence and the height of nine feet has probably never been attained by man.
Suppose the proof had shown that upon approaching the entrance to the tunnel the plaintiff was standing up and his body had been found between the entrance and the west end of the-arch, would it be assumed that his head had struck the roof of' the tunnel, which would have been eight feet ten inches above the-top of the car; in other words, would the court, to sustain the judgment, assume him to have been over eight feet ten inches in height? Yet that assumption would call for no greater exercise of the imagination than to suppose his head to have reached the-bottom of the arch when he was in a sitting posture. To assume either fact requires us to believe the plaintiff was nearly, if not fully, nine feet in height.
I think, therefore, the court may take judicial notice of the fact that a man could not strike his head against an obstruction four-feet and seven inches above the place on which he was sitting, and that being so, the negligence of the defendant was not established. ,
In no other way or manner is it suggested that the defendant. *733 was negligent, except in the maintenance oí the arch and the failure to warn the plaintiff of its existence.
Unless the plaintiff’s injuries can, by a preponderance of evidence, be attributed to those causes, his case must fail.
Unless the proof shows that he struck his head against the arch .the judgment can only be sustained on pure speculation.
There are numerous ways in which the accident might have happened, but none other have any support in the testimony, an if the case is left in such a condition that it is just as possible the injury came from one cause as another, the judgment must be reversed Taylor v. Yonkers, 105 N. Y., 202; 7 N. Y. State Rep., 332.
It has been said that an appellate court will not take judicial notice of facts not proven on the trial for the purpose of reversing a judgment. While all reasonable intendments should be indulged in to support a judgment, the court is not called upon to assume the existence of a fact which is contrary to the ordinary course of nature, solely because the party raising the question did not give oral testimony upon it at the trial.
In a case like this, in which it is well known that it can be submitted to a jury with generally but one result, the judgment should not be upheld when it is apparent that the verdict is not supported by the evidence.
Here the finding which must exist to support the judgment is contrary to our general knowledge, and so far outside of common occurrence that it may in the absence of further proof be regarded as contrary to nature, and hence untrue, and substantial justice will be done by reversing the judgment and granting a new trial.
Upon such trial if the plaintiff was a giant in stature, or if, as claimed by the learned counsel for respondent, the space above the car was less than I have stated, such facts may be made clear.
The judgment should be reversed, and a new trial granted, costs to abide event
Follett, Ch J., Potter and Parker, JJ., concur; Bradley and Vann, JJ., dissent; Haight, J., not sitting.