HART et al. v. MINCHEN et al.

(Circuit Court, S. D. Iowa, O. D. January 2, 1895.)

No. 3,576.

GUARANTY—NOTIFICATION OF ACCEPTANCE—INTERPRETATION OF LETTER.

N., an Iowa merchant, having been refused credit by complainants in Chicago, procured from defendant a letter addressed to them, and offering to guaranty payment of such purchases as N. might make for his fall and winter trade. On the strength of this letter, plaintiffs sold N. goods, and, on the same day, wrote to defendant, acknowledging the receipt of his letter "guarantying whatever N. may purchase of us for his fall and winter stock," and saying, "His purchases up to this time amount to $3,390.50, which we are getting ready for shipment." *Held* that, in view of the situation of the parties, this letter was a valid notice of acceptance of the offer of guaranty, so as to make the guarantor liable for the amount of the purchases.

This was an action at law by Harry Hart, Max Hart, Joseph Schaffner, and Marcus Marx against William T. Minchen and others, on an alleged contract of guaranty.

Stone & Dawson and Tenney, McConnell & Coffeen, for plaintiffs.

A. U. Quint and L. W. Ross, for defendant Minchen.

WOOLSON, District Judge. The following facts are found, as herein proven:

Plaintiffs were in August, 1893, and have ever since been residents and citizens of the state of Illinois, and defendant Minchen at said date was, and now is, a resident and citizen of the state of Iowa. At said date, defendant Jonas Nichols was also a citizen and resident of the state of Iowa, and engaged in business as a clothing merchant in Carroll, Iowa. Prior thereto, for some years, Minchen and Nichols had been in said clothing business, as copartners, at said Carroll. Nichols, on May 2, 1893, succeeded to this business. In August, 1893, said Nichols was desirous of purchasing an additional stock of clothing from plaintiffs, who then composed the firm of Hart, Schaffner & Marx, with place of business at Chicago, Ill. Defendant Minchen at said date held a note, payable on demand, signed by said Nichols, for $19,000. Of this $19,000, $2,000 represented advances. Nichols had applied to plaintiffs for a purchase of goods, but, as he informed Minchen, his credit had been "written down" so that he could not buy goods. Whereupon, on August 14, 1893, defendant Minchen wrote, and delivered to defendant Nichols, the following:

Hart, Schaffner & Marx, Chicago—Gentlemen: I will guaranty the payment of such purchases as Jonas Nichols may make of you, in the line of merchandise in [which] you deal, for this fall and winter trade.

Yours, respectfully,                        W. T. Minchen.

Nichols took this letter, in person, to Chicago, and delivered it to plaintiff's firm, and on the credit of this letter said firm sold and delivered to said Nichols goods amounting to $3,442.75. These sales and deliveries extended from August 24, 1893, to September

22d of same year, $3,035 being so sold on August 24th. The terms of sale were four months from November 1, 1893. The goods began to arrive at the store of said Nichols, at said Carroll, in a few days after said first purchase by Nichols, and were received by him, and placed in his stock in his said store. Upon August 24, 1893, plaintiffs wrote, and duly mailed to defendant Minchen, the following letter:

Chicago, Aug. 24, 1893.

Mr. W. T. Minchen, Carroll, Iowa—Dear Sir: We desire to acknowledge receipt of your favor of the 14th, guarantying whatever Jonas Nichols may purchase of us for his fall and winter stock. His purchases up to this time amount to $3,390.50, which we are getting ready for shipment.

Yours, truly,                       Hart, Schaffner & Marx.

Upon October 30, 1893, plaintiffs wrote, and duly mailed to defendant Minchen, the following letter:

Chicago, October 30, 1893.

Mr. W. T. Minchen, Carroll, Iowa: We inclose statement of goods amounting to $3,342 75/100 dollars, purchased of us by Jonas Nichols, covered by your guaranty of August 14, 1893. The bills are dated Nov. 1, and are subject to a discount of 7%, provided they are paid by the 10th of November. We write you this so that you may avail yourself of the discount terms, if you wish. The account matures March 1, at which time we shall look to you for prompt payment, in case you do not discount meanwhile.

Hart, Schaffner & Marx.

On September 25, 1893, the sheriff of Carroll county, Iowa, at the suit of defendant Minchen, attached and took possession of the stock of goods then owned by Nichols, and in his said store at Carroll; and, on the next day, Nichols, in consideration of a receipt from defendant Minchen in full of his indebtedness to said Minchen, passed to said Minchen his interest in this stock of goods, and the sheriff released them to said Minchen. At this date, Nichols was insolvent. Indeed, said Nichols, at the date of the execution by Minchen of his letter of August 14, 1893, was unable to pay the debts then owing by him, and this condition was known to defendant Minchen. When the bills for goods fell due, plaintiffs demanded of defendant Minchen payment for amount of such bills.

The substituted petition filed herein September 27, 1894, sets up the letter above quoted, of August 14, 1893; avers the sale of said goods to Nichols was made on the credit of said letter; that plaintiffs, within a reasonable time after the receipt of said letter, notified defendant Minchen of their acceptance thereof, and also, within a reasonable time after the completion of said sales, plaintiffs notified said Minchen of the amount thereof, and that said Nichols was insolvent at the time when notice of amount of such sales should be made to said Minchen, and when said bills therefor fell due according to the terms of such sales; that said Minchen had actual knowledge of such sales by plaintiffs to said Nichols, and of the amount thereof; and that due demand for payment has been made, and no part of such bills have been paid. Defendant Minchen's answer is a denial "of each and every allegation in petition contained."

The points at issue herein, according to the evidence and the theory on which the defense was urged at the trial, are correctly and

concisely summed up in the concluding lines of the brief presented by counsel for defendant Minchen, as follows:

In conclusion, we feel that the case is just one of construction of the letters, if the court should believe that. Minchen received the letter of August 24. That he did not receive it, makes him very positive in his denial of it.

The decisive points, according to the theory on which the case was argued and defense urged, are (1) that defendant Minchen did not receive the letter of August 24th from plaintiffs to him; (2) that said letter is not an acceptance of the letter of offer of guaranty (Minchen's letter of August 14th) above set out. No claim is made that the goods were not sold to Nichols by plaintiff, and no claim of payment is made.

The evidence as to whether the letter of August 24th, supra, was actually received by defendant Minchen, is conflicting. Nichols testifies as to conversations with Minchen, wherein the latter told the former that he had received it, and also that plaintiffs were "not so cute" as another firm, because the other firm had sent him a printed form of guaranty, which he had signed and sent back. Nichols also testifies that Minchen showed him the letter, and he says that the letter of August 24th, as herein introduced, is a copy, as nearly as he can remember it. Nichols also testifies that Minchen, in this conversation, asked him whether he (Nichols) did not think he had gone a little strong, in purchasing the amount named in this letter. Minchen, on the other hand, denies these statements, and denies that he ever received or saw any such letter. The evidence shows, without contradiction, that Minchen had a desk—in fact, had his office, for the transaction of some of his business—in Nichols' store at the time it is alleged this letter was received by him. And evidence was introduced, on the one hand, showing that about this time a letter from plaintiffs, addressed to Minchen, was seen on his desk; while, on the other hand, this is denied. So, too, as to Minchen being present about the store while the goods were being received is in conflict. But a careful consideration of all the evidence brings my mind to the conclusion— and I so find—that this letter was received by Minchen. It is shown to have been mailed with the return card printed on the envelope, and that it was never returned to plaintiffs. Minchen certainly was interested, and deeply interested, in these purchases by Nichols. The evidence is convincing that at this time Nichols had not sufficient means to pay the indebtedness Minchen held against him. And the latter must have felt at least some anxiety as to the purchases made on the credit of his guaranty. But the testimony of defendant Minchen nowhere reveals any inquiry or examination or other investigation made by said Minchen to ascertain what transactions the plaintiffs had had with Nichols on the strength of the letter of guaranty which said Minchen had given. It seems incredible that Minchen, knowing as he did the facts as to Nichols' insolvency, would have been thus careless as to the possible liability of his own for Nichols' purchases of plaintiff, had he not been advised by this letter of the facts. I do not deem it necessary to inquire whether the fact that plaintiffs duly mailed this

letter of August 24th would be sufficient to constitute, in law, an acceptance, without proof that the letter was actually received by Minchen; nor to inquire whether the letter of October 30th, from plaintiffs to said Minchen (whose receipt the latter admits), was, under the circumstances proven, a sufficient acceptance, nor whether, as claimed by plaintiffs, the facts attending the sale, billing, and delivery of the goods were so within Minchen's knowledge as to constitute such acceptance, within the statement in Reynolds v. Douglass, 12 Pet. 497:

Such notice of acceptance need not be in any set form, or even in writing, but may be inferred by the jury from the facts and circumstances which shall warrant such inference.

The further claim of defendant Minchen, is that this letter is not, in law or fact, an acceptance, but that the same is (using the phraseology found in the brief of counsel for defendant) "merely a business courtesy, in acknowledgment of a communication." There can be no serious difference as to the general rules applicable in construing this letter. And we may derive assistance from some of the decisions of the supreme court, wherein letters of guaranty have been under consideration. In Mauran v. Bullus, 16 Pet. 528, the court say:

In the construction of all instruments, to ascertain the intention of the parties is the great object of the court. And this is especially the case in acting upon guaranties.

And the court declare that only by reference to the facts and circumstances under which the instrument was given can it be correctly understood and construed. The language used by the same court in Lawrence v. McCalmont, 2 How. 426, though made with reference to construction of letters of guaranty, has here great pertinence.

The words should receive a fair and reasonable interpretation, so as to attain the object for which the instrument is designed, and the purposes to which it is applied. We should never forget that letters of guaranty are commercial instruments generally drawn up by merchants in brief language, sometimes inartificial, and often loose in their structure and form. And to construe the words of such instrument with a nice and technical care would not only defeat the intentions of the parties, but render them too unsafe a basis to rely on for extensive credits so often sought in the present active business of commerce throughout the world.

In Bell v. Bruen, 1 How. 169, the supreme court, in speaking of letters of guaranty, declare that they—

Are usually drawn by merchants, rarely with caution, and scarcely ever with precision. They refer in most cases * * * to various circumstances and extensive commercial dealings in the briefest and most casual manner, without any regard to form; leaving much to inference, and their meaning open to ascertainment from extrinsic circumstances and facts accompanying the transaction, without referring to which they could rarely be properly understood by merchants, or by courts of justice. The attempt, therefore, to bring them to a standard of construction founded on principles neither known nor regarded by the writers could not do otherwise than to produce confusion. Such has been the consequence of the attempt to subject this description of commercial engagements to the same rules of interpretation applicable to bonds and similar precise contracts. * * * We think the courts should adopt a construction which, under all the circumstances of the case, ascribes

the most reasonable, probable, and natural conduct of the parties. * * * "It is to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety," as declared in Lee v. Dick, 10 Pet. 493. The presumption is, of course, to be ascertained from the facts and circumstances accompanying the entire transaction.

The language above quoted, while used with reference to letters of guaranty, will apply with suggestive force to letters of acceptance. For the facts accompanying and surrounding the writing such letters of acceptance usually lie within the general statement just quoted, and, equally with that relating to letters of guaranty, would it be unreasonable and unfair to measure and construe letters of acceptance with "technical nicety." On the contrary, such letters rightfully demand to be interpreted and construed "according to what is fairly to be presumed to have been the understanding of the parties," as "ascertained from the facts and circumstances accompanying the entire transaction." Bell v. Bruen, supra.

In the case at bar we have a letter, confessedly an offer to guaranty, written by defendant Minchen with the expectation and intention of its being used by Nichols as the basis of credit to be by plaintiffs extended on goods sold. The goods are sold. This Minchen knew. And he receives a letter from plaintiffs, and there is shown no state of facts, outside of the letter of guaranty which Minchen had sent to plaintiffs, which could in any manner, or to any degree, impose on plaintiffs the duty or apparent desire to notify Minchen of the transactions which had passed between plaintiffs and Nichols, and with which transactions, except through said letter of guaranty, Minchen had not the least concern or interest, so far as plaintiffs knew. No basis appears in the evidence, or is presented in the argument of counsel, why plaintiffs should either advise Minchen of the receipt of his letter of guaranty, or of the amount of purchases which Nichols had thus far made, save and except as plaintiffs desired to advise Minchen of what they had done and were doing on the credit of such letter. There existed between them, otherwise, no business obligation demanding or suggesting this letter of August 24th. "Business courtesy" certainly did not require its writing. It bears on its face evidence of having been written as a letter of advice. Advice as to what? It states the receipt of his letter of guaranty, and advises Minchen of the amount of sales up to the letter's date, and that plaintiffs were shipping the goods. Now, in the light of "the facts and circumstances accompanying the entire transaction," and "giving the words a fair and reasonable interpretation, so as to attain the object for which the instrument was designed," and construing the letter "according to what is fairly to be presumed to have been the understanding of the parties" at the time the letter was written by plaintiffs and received by defendant Minchen, and so construing it "without technical nicety," can there be other than the one answer,—that plaintiffs wrote it, as they testify, to indicate their acceptance of the letter of guaranty, and their action thereunder, and that Minchen, when he received it, so recognized and understood it? And could jury or court fail to find, from the facts and cir-

cumstances, that such letter constituted, and warranted the inference that it was, a notification of the acceptance of the offer of guaranty? Indeed, what other view could defendant Minchen have taken of it at the time he received it? Could he have regarded it other than as intended by plaintiffs,—as indicating to him their having accepted and acted on his letter of guaranty? What possible reason existed for his regarding it in any other manner than thus intended by plaintiffs?

I find, then, that, within a reasonable time after receipt by plaintiffs of the letter of guaranty, written by defendant Minchen, plaintiffs advised Minchen of their acceptance thereof. I find due from defendant Minchen to plaintiffs the sum of $3,442.75, with 6 per cent. interest thereon from September 1, 1894, for which, and costs, judgment will be rendered herein accordingly. To all of which defendant Minchen duly excepts, and is given 90 days from this date to prepare, have signed and filed, his bill of exceptions. And, as to defendant Nichols, this cause is continued.